## ELLIS ET AL. *v.* DYSON ET AL.

No. 73–130. Argued November 12, 1974—Decided May 19, 1975

BLACKMUN, J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, MARSHALL, and REHNQUIST, JJ., joined. REHNQUIST, J., filed a concurring opinion, *post,* p. 435. WHITE, J., filed an opinion concurring in part and dissenting in part, *post,* p. 437. POWELL, J., filed a dissenting opinion, in which STEWART, J., joined, and in Part II of which BURGER, C. J., joined, *post,* p. 437.

*Burt Neuborne* argued the cause for petitioners. With him on the brief were *Walter W. Steele, Jr., John E. Kennedy, Joel Gora,* and *Melvin L. Wulf.*

*Douglas H. Conner* argued the cause for respondents. With him on the brief was *N. Alex Bickley.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This action, instituted in the United States District Court for the Northern District of Texas, challenges the constitutionality of the loitering ordinance of the city of Dallas. We do not reach the merits, for the District Court dismissed the case under the compulsion of a procedural precedent of the United States Court of Appeals for the Fifth Circuit which we have since reversed.

## I

Petitioners Tom E. Ellis and Robert D. Love, while in an automobile, were arrested in Dallas at 2 a. m. on January 18, 1972, and were charged with violating the city's loitering ordinance. That ordinance, § 31–60 of the 1960 Revised Code of Civil and Criminal Ordinances of the City of Dallas, Texas, as amended by Ordinance No. 12991, adopted July 20, 1970, provides:

> "It shall be unlawful for any person to loiter, as here-inafter defined, in, on or about any place, public or private, when such loitering is accompanied by activity or is under circumstances that afford probable cause for alarm or concern for the safety and well-being of persons or for the security of property, in the surrounding area."

The term "loiter" is defined to

> "include the following activities: The walking about aimlessly without apparent purpose; lingering; hanging around; lagging behind; the idle spending of

time; delaying; sauntering and moving slowly about, where such conduct is not due to physical defects or conditions."

A violation of the ordinance is classified as a misdemeanor and is punishable by a fine of not more than $200.

Before their trial in the Dallas Municipal Court [1] petitioners sought a writ of prohibition from the Texas Court of Criminal Appeals to preclude their prosecution on the ground that the ordinance was unconstitutional on its face. App. 29. The petitioners contended, in particular, that § 31–60 is vague and overbroad, that it "permits arrest on the basis of alarm or concern only," and that it allows the offense to be defined "upon the moment-by-moment opinions and suspicions of a police officer on patrol." App. 31. The Court of Criminal Appeals, however, denied the application without opinion on February 21, 1972.[2] The following day the Municipal Court proceeded to try the case. After overruling petitioners' motion to dismiss the charges on the grounds of the ordinance's unconstitutionality, the court accepted their pleas of *nolo contendere* [3] and fined each petitioner $10 plus $2.50 costs.

---

[1] The Municipal Court was formerly known as the Corporation Court. The name was changed by Tex. Sess. Laws, 61st Leg., p. 1689, c. 547 (1969), now codified as Tex. Rev. Civ. Stat., Art. 1194A (Supp. 1974–1975).

[2] The denial may have been based on *State ex rel. Bergeron* v. *Travis County Court*, 76 Tex. Cr. R. 147, 153–154, 174 S. W. 365, 367–368 (1915), and *State ex rel. Burks* v. *Stovall*, 324 S. W. 2d 874, 877 (Tex. Ct. Crim. App. 1959), requiring that questions concerning the constitutionality of a local ordinance be raised in County Court before a writ of prohibition will issue from the Court of Criminal Appeals.

[3] The pertinent Texas statute provides:

"On the part of the defendant, the following are the only pleadings:

.    .    .    .  .    .

"6. A plea of nolo contendere. The legal effect of such plea shall

Under Texas' two-tier criminal justice system, petitioners could not directly appeal the judgment of the Municipal Court, but were entitled to seek a trial *de novo* in the County Court,[4] Tex. Code Crim. Proc., Art. 44.17 (1966), by filing at least a $50 bond within the 10 days following the Municipal Court's judgment. Arts. 44.13 and 44.16. At the *de novo* trial petitioners would have been subject to the same maximum fine of $200. Appellate review of the County Court judgment would be available in the Texas Court of Criminal Appeals if the fine imposed exceeded $100. Art. 4.03.

Electing to avoid the possibility of the imposition of a larger fine by the County Court than was imposed by the Municipal Court, petitioners brought the present federal action[5] under the civil rights statutes, 42 U. S. C. § 1983[6] and 28 U. S. C. §§ 1343 (3) and (4), and under the Declaratory Judgment Act, 28 U. S. C. §§ 2201–2202.

---

be the same as that of a plea of guilty, but the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Tex. Code Crim. Proc., Art. 27.02 (1966), as amended by Tex. Sess. Laws, 60th Leg., c. 659, § 17, p. 1738 (1967).

Since petitioners' convictions, the Article has been further amended but the new amendments are of no significance for this case. See Tex. Sess. Laws, 63d Leg., c. 399, § 2 (A), p. 969 (1973).

[4] We upheld a similar two-tier system in *Colten* v. *Kentucky*, 407 U. S. 104, 112–119 (1972).

[5] The federal action was instituted after the 10-day period for posting bond and filing for review *de novo* in the County Court had expired.

[6] "§ 1983. Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Named as defendants, in both their individual and official capacities, were the then chief of police, the city attorney, the then city manager, the then clerk of the Municipal Courts, and the mayor. Petitioners sought a declaratory judgment that the loitering ordinance is unconstitutional. They complained that the statute is vague and overbroad, places too much discretion in arresting officers, proscribes conduct that may not constitutionally be limited, and impermissibly chills the rights of free speech, association, assembly, and movement. Petitioners also sought equitable relief in the form of expunction of their records of arrests and convictions for violating the ordinance, and of some counteraction to any distribution to other law enforcement agencies of information as to their arrests and convictions. No injunctive relief against any future application of the statute to them was requested. Cf. *Reed* v. *Giarrusso,* 462 F. 2d 706 (CA5 1972).

The petitioners moved for summary judgment upon the pleadings, admissions, affidavits, and "other matters of record." App. 42. The respondents, in turn, moved to dismiss and suggested, as well, "that the abstention doctrine is applicable." *Id.,* at 58. The District Court held that federal declaratory and injunctive relief against future state criminal prosecutions was not available where there was no allegation of bad-faith prosecution, harassment, or other unusual circumstances presenting a likelihood of irreparable injury and harm to the petitioners if the ordinance were enforced. This result, it concluded, was mandated by the decision of its controlling court in *Becker* v. *Thompson,* 459 F. 2d 919 (CA5 1972). In *Becker,* the Fifth Circuit had held that the principles of *Younger* v. *Harris,* 401 U. S. 37 (1971), applied not only where a state criminal prosecution was actually pending, but also where a state criminal prosecution was merely threatened. Since the present petitioners' complaint

contained insufficient allegation of irreparable harm, the case was dismissed. 358 F. Supp. 262 (1973).[7]  The United States Court of Appeals for the Fifth Circuit affirmed without opinion.  475 F. 2d 1402 (1973).  After we unanimously reversed the *Becker* decision on which the District Court had relied, *Steffel* v. *Thompson,* 415 U. S. 452 (1974), we granted the petition for certiorari. 416 U. S. 954 (1974).

## II

In *Steffel* the Court considered the issue whether the *Younger* doctrine should apply to a case where state prosecution under a challenged ordinance was merely threatened but not pending.  In that case, Steffel and his companion, Becker, engaged in protest handbilling at a shopping center.  Police informed them that they would be arrested for violating the Georgia criminal trespass statute if they did not desist.  Steffel ceased his handbilling activity, but his companion persisted in the endeavor and was arrested and charged.

Steffel then filed suit under 42 U. S. C. § 1983 and 28 U. S. C. § 1343 in Federal District Court, seeking a declaratory judgment [8] that the ordinance was being applied in violation of his rights under the First and Fourteenth Amendments.  It was stipulated that if Steffel returned and refused upon request to stop handbilling, a warrant would be sworn out and he might be arrested and charged with a violation of the statute.  415 U. S., at 456.  Con-

---

[7] The District Court noted, too, that no showing of exhaustion of the state appellate process had been made. 358 F. Supp., at 265–266.

[8] Steffel initially also sought an injunction. After the District Court had denied both declaratory and injunctive relief, Steffel chose to appeal only the denial of declaratory relief. *Becker* v. *Thompson,* 459 F. 2d 919, 921 (CA5 1972); *Steffel* v. *Thompson,* 415 U. S. 452, 456 n. 6 (1974). We were not presented, therefore, with any dispute concerning the propriety of injunctive relief.

trary to the views of the District Court and of the Court of Appeals in the present case, we held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." *Id.,* at 475.

Thus, in *Steffel,* we rejected the argument that bad-faith prosecution, harassment, or other unique and extraordinary circumstances must be shown before federal declaratory relief may be invoked against a genuine threat of state prosecution. Unlike the situation where state prosecution is actually pending, cf. *Samuels* v. *Mackell,* 401 U. S. 66 (1971), where there is simply a threatened prosecution, considerations of equity, comity, and federalism have less vitality.[9] Instead, the opportunity for adjudication of constitutional rights in a federal forum, as authorized by the Declaratory Judgment Act, becomes paramount. 415 U. S., at 462–463.

Exhaustion of state judicial or administrative remedies in *Steffel* was ruled not to be necessary, for we have long held that an action under § 1983 is free of that require-

---

[9] The Court stated in *Steffel, id.,* at 462:

"When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."

ment. 415 U. S., at 472–473. See, *e. g., Monroe* v. *Pape,* 365 U. S. 167, 183 (1961). We did require, however, that it be clearly demonstrated that there was a continuing, actual controversy, as is mandated both by the Declaratory Judgment Act, 28 U. S. C. § 2201, and by Art. III of the Constitution itself. Although we noted in *Steffel,* 415 U. S., at 459, that the threats of prosecution were not "imaginary or speculative," as those terms were used in *Younger,* 401 U. S., at 42, we remanded the case to the District Court to determine, among other things, if the controversy was still live and continuing. See 415 U. S., at 460. In particular, we observed that the handbilling had been directed against our Government's policy in Vietnam and "the recent developments reducing the Nation's involvement in that part of the world" could not be ignored, so that there was a possibility there no longer existed " 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,' " *ibid.,* quoting *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.,* 312 U. S. 270, 273 (1941).

## III

The principles and approach of *Steffel* are applicable here. The District Court and the Court of Appeals decided this case under the misapprehension that the *Younger* doctrine applied where there is a threatened state criminal prosecution as well as where there is a state criminal prosecution already pending. Those courts had no reason to reach the merits of the case or to determine the actual existence of a genuine threat of prosecution, or to inquire into the relationship between the past prosecution and the threat of prosecutions for similar activity in the future. Now that *Steffel* has been decided, these issues may properly be investigated.

We therefore reverse the judgment of the Court of Appeals and remand the case to the District Court for reconsideration in the light of our opinion in *Steffel* v. *Thompson,* reversing *Becker* v. *Thompson.* It is appropriate to observe in passing, however, that we possess greater reservations here than we did in *Steffel* as to whether a case or controversy exists today. First, at oral argument counsel for petitioners acknowledged that they had not been in touch with their clients for approximately a year and were unaware of their clients' whereabouts. Tr. of Oral Arg. 5–7, 18–22, 25–26. Petitioners, apparently, are not even apprised of the progress of this litigation. Unless petitioners have been found by the time the District Court considers this case on remand, it is highly doubtful that a case or controversy could be held to exist; it is elemental that there must be parties before there is a case or controversy. Further, if petitioners no longer frequent Dallas, it is most unlikely that a sufficiently genuine threat of prosecution for possible future violations of the Dallas ordinance could be established.

Second, there is some question on this record as it now stands regarding the pattern of the statute's enforcement. Answers to interrogatories reveal an average of somewhat more than two persons per day were arrested in Dallas during seven specified months in 1972 for the statutory loitering offense. App. 68. Of course, on remand, the District Court will find it desirable to examine the current enforcement scheme in order to determine whether, indeed, there now is a credible threat that petitioners, assuming they are physically present in Dallas, might be arrested and charged with loitering. A genuine threat must be demonstrated if a case or controversy, within the meaning of Art. III of the Constitution and of the Declaratory Judgment Act, may be said to exist. See *Steffel* v. *Thompson,* 415 U. S., at 458–460. See gen-

erally *O'Shea* v. *Littleton,* 414 U. S. 488, 493–499 (1974); *Boyle* v. *Landry,* 401 U. S. 77, 81 (1971). Further, the credible threat must be shown to be alive at each stage of the litigation. *Steffel* v. *Thompson,* 415 U. S., at 459 n. 10, and cases cited therein.

Because of the fact that the District Court has not had the opportunity to consider this case in the light of *Steffel,* and because of our grave reservations about the existence of an actual case or controversy, we have concluded that it would be inappropriate for us to touch upon any of the other complex and difficult issues that the case otherwise might present. The District Court must determine that the litigation meets the threshold requirements of a case or controversy before there can be resolution of such questions as the interaction between the past prosecution and the threat of future prosecutions, and of the potential considerations, in the context of this case, of the *Younger* doctrine, of res judicata, of the plea of *nolo contendere,* and of the petitioners' failure to utilize the state appellate remedy available to them. Expunction of the records of the arrests and convictions and the nature of corrective action with respect thereto is another claim we do not reach at this time.

The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion. No costs are allowed.

*It is so ordered.*

MR. JUSTICE REHNQUIST, concurring.

I join the opinion of the Court, and add these few words only to indicate why I believe the Court is quite correct in leaving to the District Court on remand the issues treated in the dissenting opinion of my Brother POWELL and the concurring and dissenting opinion of my Brother WHITE.

The District Court granted respondents' motion to dismiss petitioners' complaint because it regarded a prior decision of the Court of Appeals, *Becker* v. *Thompson*, 459 F. 2d 919 (CA5 1972), as controlling. While it would have been more in keeping with conventional adjudication had that court first inquired as to the existence of a case or controversy, as suggested in the opinion of my Brother POWELL, I cannot fault the District Court for disposing of the case on what it quite properly regarded at that time as an authoritative ground of decision. Indeed, this Court has on occasion followed essentially the same practice. *Secretary of the Navy* v. *Avrech*, 418 U. S. 676 (1974); *United States* v. *Augenblick*, 393 U. S. 348 (1969). The Court of Appeals confirmed the District Court's understanding of the law when it affirmed by order, 475 F. 2d 1402 (CA5 1973).

Later this Court, in *Steffel* v. *Thompson*, 415 U. S. 452 (1974), reversed the decision of the Court of Appeals which that court and the District Court had regarded as dispositive of this case. In *Steffel*, we held that *Younger* v. *Harris*, 401 U. S. 37 (1971), did not bar access to the District Court when the plaintiff sought only declaratory relief and no state proceeding was pending, but the Court also emphasized that petitioner must present "an 'actual controversy,' a requirement imposed by Art. III of the Constitution." 415 U. S., at 458. Properly viewed, therefore, a remand for reconsideration in light of *Steffel* directs the District Court to consider whether the requisite case or controversy was and is presented, as well as to determine the appropriateness of declaratory relief.

I believe the Court's remand to the District Court, which will give that court an opportunity to reconsider the jurisdictional issues within the framework of *Steffel* and to pass in the first instance on the other issues that

my Brothers POWELL and WHITE would have us decide today, is entirely appropriate. Since I read the opinion of the Court as intimating no views on either of these questions that are contrary to those suggested by my dissenting Brethren, I am quite content to leave them for the consideration of the District Court in the first instance.

MR. JUSTICE WHITE, concurring in part and dissenting in part.

I join the opinion of the Court except insofar as it fails to affirm the dismissal in the courts below of petitioners' prayer for a mandatory injunction requiring the expunction of their criminal records. With respect to that issue, the prerequisite of a case or controversy is clearly present; but under *Younger* v. *Harris,* 401 U. S. 37 (1971), the District Court was plainly correct in dismissing the claim rather than ruling on its merits. *Huffman* v. *Pursue, Ltd.,* 420 U. S. 592 (1975), would appear to require as much.

MR. JUSTICE POWELL, with whom MR. JUSTICE STEWART joins, and THE CHIEF JUSTICE joins as to Part II, dissenting.

Petitioners were convicted in Dallas, Tex., Municipal Court, on pleas of *nolo contendere,* of violating the city's loitering ordinance. They were fined $10 each. Under Texas law petitioners had the right to a trial *de novo* in the County Court. Appellate review of an adverse County Court judgment imposing a fine in excess of $100 would have been available in the Texas Court of Criminal Appeals. A determination by the highest state court in which a decision could be had, if it upheld the constitutionality of the ordinance, would have been appealable to this Court. 28 U. S. C. § 1257 (2).

Petitioners deliberately elected to forgo these remedies, allowed their convictions in Municipal Court to become final, and thereafter filed this action under 42 U. S. C. § 1983 in the Federal District Court. Petitioners' complaint attacked the constitutionality of the ordinance and sought two forms of relief: [1] (i) an order, characterized by the District Court as a request for an injunction, expunging the records of petitioners' arrests and convictions for loitering; and (ii) a declaratory judgment that the ordinance is unconstitutional, *i. e.*, that it cannot constitutionally be applied to them in the future. The District Court denied the requested relief, and the Court of Appeals for the Fifth Circuit affirmed.

In its decision today, relying on *Steffel* v. *Thompson,* 415 U. S. 452 (1974), the Court reverses the decision of the Court of Appeals and remands the case for further consideration of petitioners' request for declaratory relief. The Court also finds it unnecessary to consider petitioners' prayer for expunction. I am in disagreement on both points. I would hold that any relief as to petitioners' previous arrests and convictions is barred by their *nolo contendere* pleas, equivalent under Texas law to pleas of guilty,[2] and by their deliberate decision to forgo state appellate remedies. As to prospective relief, I think that *Steffel* and the general principles of justiciability to which it adheres require affirmance, not a reversal and remand. In view of the undisputed facts in this case, we should decide these issues now. The ends of justice will not be served by a remand and further litigation. More-

---

[1] The complaint, couched in conclusory terms, does not specifically request a declaration that the ordinance cannot be applied to petitioners in the future. Petitioners' brief and argument in this Court nevertheless focused primarily on this relief, and the Court accepts this generous reading of the vague and general language of the complaint.

[2] *Ante,* at 428–429, n. 3.

over, today's decision, especially in its reading of *Steffel,*
seems likely to confuse both the District Court in this case
and other federal courts faced with an increasing number
of cases raising similar problems.

## I

I turn first to the retrospective relief sought by peti-
tioners: their prayer for an order expunging the records
of their arrests and convictions. The question raised by
this prayer is whether a plaintiff may resort to § 1983 to
attack collaterally his state criminal conviction when he
has either knowingly pleaded guilty to the charge or
failed to invoke state appellate remedies. This issue was
raised in the courts below,[3] decided by those courts,[4] and
argued to this Court.[5] As the Court recognizes, *ante,* at
435, this issue is unaffected by our decision in *Steffel,*
which is relevant only to petitioners' request for prospec-
tive relief. Moreover, even if the case is moot insofar as
it concerns prospective relief because petitioners no longer
live in Dallas, that fact has no bearing on petitioners' re-
quest for expunction. Thus, I can see no justification
for deferring resolution of this important issue.

---

[3] Respondents did not expressly plead res judicata generally in bar
of petitioners' constitutional claim. See Fed. Rule Civ. Proc. 8 (c).
They did, however, argue that by their pleas of *nolo contendere* peti-
tioners had waived any right to relitigate the validity of the Munici-
pal Court convictions in federal court. Petitioners' counsel do not
deny that this issue is here. Indeed, they frankly recognize that
their clients are making "a collateral challenge to the validity of a
state criminal conviction." Brief for Petitioners 6. See also *id.,* at
12 *et seq.*

[4] The District Court, in dismissing petitioners' complaint, relied
on their pleas of *nolo contendere* and their failure to exhaust state
remedies. App. 62. The Court of Appeals affirmed without
opinion.

[5] One of the two "questions presented" by petitioners was whether
they may "seek Federal equitable relief expunging any record of their
arrest and conviction." Brief for Petitioners 2.

Collateral attack in federal court on state criminal convictions normally comes in habeas corpus proceedings under 28 U. S. C. § 2241 *et seq.* In such proceedings, the state court's resolution of a constitutional claim generally is not binding on the federal court. See *Brown* v. *Allen,* 344 U. S. 443 (1953). Petitioners, however, were neither incarcerated nor otherwise restrained as a result of their convictions and thus could not satisfy the custody requirement of habeas corpus jurisdiction. *E. g., Carafas* v. *LaVallee,* 391 U. S. 234 (1968). They accordingly proceeded under § 1983, seeking to have the ordinance invalidated, their convictions declared void, and the records thereof expunged.

The Court has never expressly decided whether and in what circumstances § 1983 can be invoked to attack collaterally state criminal convictions. The resolution of this general problem depends on the extent to which, in a § 1983 action, principles of res judicata bar relitigation in federal court of constitutional issues decided in state judicial proceedings to which the federal plaintiff was a party. But we need not resolve this general problem here.[6] For even assuming, *arguendo,* that the scope of

---

[6] In *Preiser* v. *Rodriguez,* 411 U. S. 475, 497 (1973), the Court noted that several of the Courts of Appeals had held "res judicata . . . fully applicable to a civil rights action brought under § 1983" and that neither state convictions that do not result in confinement nor state civil judgments can be collaterally impeached in federal courts. Indeed, most of the Circuits have considered this question, either in the context of a prior state-court civil or criminal judgment, and each has so ruled. See *Mastracchio* v. *Ricci,* 498 F. 2d 1257 (CA1 1974), cert. denied, 420 U. S. 909 (1975); *Lackawanna Police Benevolent Assn.* v. *Balen,* 446 F. 2d 52 (CA2 1971); *Kauffman* v. *Moss,* 420 F. 2d 1270 (CA3), cert. denied, 400 U. S. 846 (1970); *Shank* v. *Spruill,* 406 F. 2d 756 (CA5 1969); *Coogan* v. *Cincinnati Bar Assn.,* 431 F. 2d 1209 (CA6 1970); *Williams* v. *Liberty,* 461 F. 2d 325 (CA7 1972); *Jenson* v. *Olson,* 353 F. 2d 825 (CA8 1965); *Scott* v. *California Supreme Court,* 426 F. 2d 300 (CA9 1970);

collateral attack is as expansive in § 1983 actions as it has been held to be in habeas corpus proceedings, I think it clear beyond question that petitioners' action for retrospective relief is barred. If petitioners had been confined as a result of their *nolo contendere* pleas and thereafter filed habeas corpus petitions in federal court, there can be no doubt that their petitions should have been dismissed. As noted above, the *nolo contendere* pleas were equivalent to guilty pleas. It is settled that when defendants plead guilty to state criminal charges, they may not seek federal habeas corpus relief on the basis of constitutional claims antecedent to and independent of the guilty pleas. *E. g., Tollett* v. *Henderson*, 411 U. S. 258, 267 (1973). In such circumstances, federal habeas petitioners may attack only "the voluntary and intelligent character" of the pleas. *Ibid.*[7] Moreover, when

*Metros* v. *United States District Court for the District of Colorado*, 441 F. 2d 313 (CA10 1970). But cf. *Ney* v. *California*, 439 F. 2d 1285, 1288 (CA9 1971). The general principle that final judgments have res judicata effect and are binding on the parties is, of course, subject to the qualification that void judgments may be collaterally impeached. Restatement, Judgments § 11 (1942). Moreover, the question whether a judgment is void—*i. e.*, "without res judicata effect for purposes of the matter at hand"—depends, absent any indication of contrary congressional intent, on the nature of the defect alleged and the gravity of the harm asserted, viewed in light of the powerful public interest in finality of litigation. *Schlesinger* v. *Councilman*, 420 U. S. 738, 752–753 (1975). This general analysis applies as much to the scope of collateral attack in habeas corpus proceedings as to the scope of collateral attack in other federal civil actions. See *Schneckloth* v. *Bustamonte*, 412 U. S. 218, 256–275 (1973) (POWELL, J., concurring). In my view, the harm asserted in habeas corpus proceedings—restraint on liberty—may justify a broader scope of collateral attack than would the kinds of injury normally concerned in actions under § 1983.

[7] Petitioners do not claim that their *nolo contendere* pleas were either involuntary or based on inadequate legal advice. See *McMann*

federal habeas petitioners deliberately have elected to forgo state appellate remedies afforded them, the federal court may deny relief.[8] *Fay* v. *Noia,* 372 U. S. 391, 438–439 (1963). When a state criminal defendant pleads guilty to state charges or refuses to invoke state appellate remedies, his conviction no longer can be said to rest on an alleged denial of a constitutional right. Instead, it rests solely on the defendant's refusal to litigate the asserted right. The only issue then cognizable on collateral attack is whether the refusal to litigate was knowing and voluntary. If it was, collateral attack based on the asserted constitutional claim is foreclosed. See *id.,* at 468–472 (Harlan, J., dissenting).

These established principles of federal habeas corpus jurisdiction should apply with at least equal force to attempts under § 1983 collaterally to attack state criminal

---

v. *Richardson,* 397 U. S. 759 (1970). Nor is this case like *Blackledge* v. *Perry,* 417 U. S. 21 (1974). In that case the Court stated that the due process right at issue, closely analogous to the constitutional double jeopardy bar, was "the right not to be haled into court at all . . . ," so that "[t]he very initiation of the proceedings . . . operated to deny [petitioner] due process of law." *Id.,* at 30–31. The Court ruled, therefore, that petitioner's guilty plea did not preclude federal habeas corpus relief. In this case, however, petitioners' claim is that the ordinance under which they had been charged is unconstitutional. The alleged constitutional infirmity thus lies not in the "initiation of the proceedings" but in the eventual imposition of punishment that, assertedly, the State cannot constitutionally exact.

[8] Although petitioners could have secured a trial *de novo* in state court, they chose to forgo that opportunity, claiming they did not want to risk increased fines. There is no indication that petitioners' choice was anything other than knowing and intelligent, nor does the possibility of increased fines constitute the kind of "grisly" choice at issue in *Fay* v. *Noia,* 372 U. S. 391, 440 (1963). See Developments in the Law—Federal Habeas Corpus, 83 Harv. L Rev. 1038, 1106–1109 (1970).

convictions.[9]  I would hold that § 1983 does not allow such deliberate circumvention of the state judicial processes, and that when a state defendant knowingly pleads guilty or fails to invoke state appellate remedies his conviction is not subject to impeachment in a § 1983 action.

## II

With respect to petitioners' request for a declaration that the Dallas ordinance is unconstitutional and cannot be applied to them in the future, the Court holds that "[t]he principles and approach of *Steffel* are applicable" and remands for reconsideration in light of our opinion in that case.  *Ante,* at 433, 434.  In my view, this disposition seriously misreads our opinion in *Steffel.* It ignores the necessity, fully recognized in *Steffel,* that a complaint make out a justiciable case or controversy, the indispensable condition under Art. III to the exercise of federal judicial power.

## A

The question, insofar as petitioners seek prospective relief, is whether the challenge to the constitutionality of the Dallas ordinance was presented, at the time the complaint was filed, in the context of a live controversy between the parties:

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient imme-

---

[9] The question is not one of election of judicial fora, as it was in *Monroe* v. *Pape,* 365 U. S. 167 (1961), but instead whether a final state-court judgment may be collaterally impeached on grounds that could have been, but deliberately were not, raised in the state court.

diacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.* v. *Pacific Coal & Oil Co.*, 312 U. S. 270, 273 (1941).

This test was met in *Steffel*. It is not even arguably met in this case.

The undisputed facts in *Steffel* showed that petitioner faced an imminent prospect of arrest and prosecution under the challenged state statute. He previously had engaged in distributing handbills at a shopping center, and on two occasions had been threatened with arrest if he continued his activity. On the second occasion, petitioner avoided arrest only by leaving the premises. His companion, who did not leave, was arrested and arraigned on a charge of criminal trespass. The parties stipulated that "if petitioner returned [to the shopping center] and refused upon request to stop handbilling, a warrant would be sworn out and he might be arrested and charged with a violation of the Georgia statute." 415 U. S., at 456. In light of these facts we said:

> "[P]etitioner has alleged threats of prosecution that cannot be characterized as 'imaginary or speculative'. . . . He has been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys a warning to stop he will likely be prosecuted. The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been 'chimerical,' *Poe* v. *Ullman*, 367 U. S. 497, 508 (1961). In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.*, at 459.

As Mr. Justice Stewart put it in his concurring opinion:

> "The petitioner . . . has succeeded in objectively showing that the threat of imminent arrest, corroborated by the actual arrest of his companion, has created an actual concrete controversy between himself and the agents of the State." *Id.*, at 476.

The situation in the present case differs from that in *Steffel* in controlling respects. Petitioners previously had been arrested for "loitering" at 2 a. m. in a section of the city remote from their residences. Whether these arrests and petitioners' subsequent convictions could have survived constitutional challenge, had it timely been made, is a matter irrelevant to the present issue. Petitioners' previous arrests and convictions are relevant to the justiciability of their prayer for prospective relief only if they evidence a realistic likelihood that *petitioners* may be arrested again and, therefore, that the ordinance causes them real and immediate harm. See *O'Shea* v. *Littleton*, 414 U. S. 488, 496 (1974). These preconditions to the requisite justiciability simply do not exist in this case.

Application of the challenged Dallas ordinance depends, by its terms, on the facts of each case. It is extremely unlikely that the exact set of circumstances leading to the previous arrest and conviction of petitioners will ever be repeated. Petitioners' brief, attempting to accommodate to *Steffel*'s rationale, refers vaguely to "petitioners' fear of arrest and prosecution." [10] Read most generously, however, the complaint and supporting ma-

---

[10] Petitioners' complaint itself nowhere alleged that they feared or had reason to fear future arrest under the Dallas ordinance. The affidavit of petitioner Love, submitted to the District Court, stated that, since his arrest, he had been "very nervous about being out in public places, especially at night and in areas of town where there are numerous police officers." App. 53.

terials are barren of *any facts* relating petitioners' past arrests to a possibility of future arrests, or otherwise substantiating their asserted fears that the Dallas ordinance again will be invoked against them. The only basis for "fear" mentioned by counsel is the fact that loitering arrests were occurring in Dallas "at the rate of more than two per day." [11] But two arrests per day in a city of more than one million persons hardly represents a high-risk situation for anyone, and certainly poses no particularized threat to petitioners. Under the facts alleged in the complaint or appearing from other materials before the District Court, petitioners' position with respect to the challenged ordinance was no different from what it would have been had they never been arrested, and their chances of future prosecution no greater than those of any other person who used the streets of Dallas. [12]

---

[11] App. 68. See Brief for Petitioners 8, 10.

[12] The several references in the Court's opinion to "threats of prosecution" must relate to the averment of general threat to the entire community, as the record is wholly devoid of any indication of present threat to petitioners. Of course, it is possible that any citizens, including petitioners, may be arrested under this ordinance. But "pleadings must be something more than an ingenious academic exercise in the conceivable." *United States* v. *SCRAP*, 412 U. S. 669, 688 (1973). And although the pleadings must be construed liberally, Fed. Rule Civ. Proc. 8 (f), the complaint and supporting materials in this case make out at most that petitioners genuinely fear future arrest and prosecution. But more than a speculative and subjective concern must be shown, as otherwise the federal courts would be open to virtually any citizen who desired an advisory opinion. As MR. JUSTICE STEWART stated in his concurring opinion in *Steffel* v. *Thompson*, 415 U. S. 452 (1974): "Our decision . . . must not be understood as authorizing the invocation of federal declaratory judgment jurisdiction by a person who thinks a state criminal law is unconstitutional, even . . . if he honestly entertains the subjective belief that he may now or in the future be prosecuted under it." *Id.,* at 476.

## B

In several cases we have found constitutional challenges to state and federal statutes justiciable despite the absence of actual threats of enforcement directed personally to the plaintiff. *E. g., Doe* v. *Bolton,* 410 U. S. 179, 188–189 (1973); *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498, 506–508 (1972). See *CSC* v. *Letter Carriers,* 413 U. S. 548, 551–553 (1973). In each such case, however, the challenged statute applied particularly and unambiguously to activities in which the plaintiff regularly engaged or sought to engage. In each case the plaintiff claimed that the State or Federal Government, by prohibiting such activities, had exceeded substantive constitutional limitations on the reach of its powers. The plaintiffs, therefore, were put to a choice.[13] Unless declaratory relief was available, they were compelled to choose between a genuine risk of criminal prosecution and conformity to the challenged statute, a conformity that would require them to incur substantial deprivation either in tangible form or in forgoing the exercise of asserted constitutional rights. In such circumstances we have recognized that the challenged statute causes the plaintiff present harm, and that the "controversy is both immediate and real." *Lake Carriers' Assn., supra,* at 508.

*Steffel* does not depart from this general analysis. The difference between *Steffel* and the above cases lies in the nature of the statute involved. *Steffel* concerned a general trespass ordinance that did not, on its face, apply particularly to activities in which Steffel engaged or sought to engage. The statute was susceptible of a multitude of applications that would not even arguably exceed constitutional limitations on state power. But the

---

[13] In all of these cases the statutes were not, through lack of enforcement, practical and legal nullities. See *Poe* v. *Ullman,* 367 U. S. 497 (1961).

threatened prosecution of Steffel, following the arrest and prosecution of his companion, demonstrated that the state officials construed the statute to apply to the precise activities in which Steffel had engaged and proposed to engage in the future. There was, therefore, no question that Steffel was confronted with a choice identical in principle and practical consequence to that faced by plaintiffs in the above cases: he could either risk criminal prosecution or forgo engaging in specific activities that he believed were protected by the First Amendment. Whichever choice he made, the harm to Steffel was real and immediate.

The pleadings in this case reveal no like circumstances. They merely aver that the Dallas ordinance has a "chilling" effect on First Amendment rights of speech and association. This averment, moreover, is related not to petitioners specifically, but rather to the "citizens of Dallas." [14] While it is theoretically possible that the ordinance may be applied to infringe petitioners' First Amendment rights, nothing in the facts relating to their respective prior arrests and convictions indicates that the ordinance has been so applied to petitioners or indeed to anyone else. In short, petitioners

---

[14] *The closest the complaint comes to addressing the justiciability problem is the following passage:*

"The sweeping scope of this ordinance means that *no citizen* is safe to carry on any conduct at any place in the City of Dallas, unless he can be telepathic and be assured that his behavior does not alarm or concern a police officer.

"The provision is violative of, and has a chilling effect upon, the free exercise of the First Amendment rights of Freedom of Association and Assembly, as well as Freedom of Speech, and similar chilling effect upon the fundamental right of Freedom of Movement. Section *31–60* is so sweeping in its potential applicability that any gathering, assembly, speech or other non-criminal behavior may subject the *citizens of Dallas* to arrest and conviction under its terms." App. 6–7. (Emphasis added.)

rely entirely on a speculative deterrent effect that the Dallas ordinance conceivably could have on the exercise of constitutional rights by all Dallas citizens. The complaint nowhere alleges that the ordinance has been applied to particular activities, assertedly within the scope of First Amendment protection, in which *petitioners* regularly engage or in which they would engage but do not because of fear of prosecution. Compare *CSC* v. *Letter Carriers, supra*, with *United Public Workers* v. *Mitchell*, 330 U. S. 75, 86–91 (1947). As the cases discussed above demonstrate, before a statute may be challenged on the ground that it deters the exercise of constitutional rights, the alleged restraint must in all events be personal to the complaining parties. "It would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other." *United Public Workers, supra*, at 90.[15]

## C

Petitioners' pleadings thus failed to demonstrate that they were suffering any "real and immediate" harm consequent to the enforcement of the Dallas ordinance. The Court's opinion, however, states that the District

---

[15] Shorn of its completely unsubstantiated First Amendment claims, the gravamen of petitioners' complaint is that the ordinance is unconstitutionally vague. But the objection to vagueness, purely as a matter of due process and devoid of First Amendment ramifications, rests in the possibility of discriminatory enforcement and in the unfairness of punishing a person who could not reasonably have predicted that the conduct in which he engaged was criminal. See, *e. g., Grayned* v. *City of Rockford*, 408 U. S. 104, 108–109 (1972). As a general matter, therefore, the harm matures and the constitutional objection becomes justiciable only when and as to those against whom the statute is enforced.

Court and the Court of Appeals "had no reason to . . . determine the actual existence of a genuine threat of prosecution, or to inquire into the relationship between the past prosecution and the threat of prosecutions for similar activity in the future." *Ante,* at 433. To the contrary, I find it clear that the District Court did hold, erroneously, that petitioners' complaint stated a justiciable claim for prospective relief.[16] But even if, as the Court apparently believes, the District Court simply assumed a justiciable claim for relief, that in itself would constitute a departure from what I had thought to be the settled order of federal adjudication. The District Court's first obligation, here as in all cases, was to determine whether, taking the allegations of the complaint as true, petitioners' claim for prospective relief was justiciable. If it was not, then there was no need—indeed, no jurisdiction—to consider the claim further.

The situation here is similar to that in *O'Shea* v. *Littleton, supra.* In that case, the District Court dismissed the suit both for want of equitable jurisdiction to grant the relief prayed for and on the ground that the defendants were immune from suit. The Court of Appeals for the Seventh Circuit reversed, and we in turn reversed the decision of the Court of Appeals. What we said there is

---

[16] For the purpose of ruling on respondents' motion to dismiss, the District Court "assumed as true every factual allegation in [petitioners'] complaint and also assume[d] that the City of Dallas will continue to enforce the ordinance and this may subject [petitioners] to future arrest and prosecution under the ordinance." App. 64. But in discussing *Reed* v. *Giarrusso,* 462 F. 2d 706 (CA5 1972), the District Court stated that the Court of Appeals in that case had concluded, *"as this court does in the case . . . sub judice,* that [petitioners] did have standing to sue since they had been arrested and alleged that they will continue to engage in the same conduct which brought about their arrests and that they fear future arrests and prosecutions." App. 65 n. 4 (emphasis added).

equally applicable here: "The complaint failed to satisfy the *threshold requirement* imposed by Art. III . . . that those who seek to invoke the power of federal courts must allege an actual case or controversy. . . . Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.'" 414 U. S., at 493, quoting *Linda R. S.* v. *Richard D.*, 410 U. S. 614, 617 (1973) (emphasis added).

There being no substantial controversy between the parties, petitioners' complaint, insofar as it sought prospective relief, should have been dismissed. The Court's opinion acknowledges that there is a serious question "whether a case or controversy exists *today.*" (Emphasis added.) But the Court relates this question to facts, not of record, that have occurred *since* this suit was filed. *Ante*, at 434. In view of the concession made at argument that petitioners' whereabouts are unknown and that counsel was no longer in touch with them,[17] there is indeed serious question whether a justiciable controversy now exists. But the critical issue, and one that the Court declines to address, is whether the petitioners were entitled to invoke federal jurisdiction when they instituted suit.

A determination of present mootness is altogether immaterial to the question whether there was federal jurisdiction at the time declaratory relief initially was

---

[17] The Court's concern as to the existence of a case or controversy "today" is expressly related to a concession made in oral argument by counsel for petitioners more than two years after the filing of this suit, a concession which strongly suggests that the counsel were arguing the case as some sort of "private attorneys general" on behalf of "the citizens of Dallas," not on behalf of petitioners. Apparently petitioners are no longer interested in the case and were not even in communication with the counsel who purport to represent them.

sought. Only if a specific, live controversy existed between the parties at the threshold can federal jurisdiction attach. And only if the requisite justiciable controversy then existed may a court determine whether it persists at some subsequent stage of the case, or whether the requested relief properly can be granted.[18] In *Steffel* we adopted precisely this order of resolving just such issues; first, we found that the case was justiciable when filed; only then did we reach the question whether declaratory relief was proper in the circumstances and remand for a determination of whether with the passage of time the threat to Steffel had subsided. There is no occasion for a remand for any purpose when the record demonstrates indisputably that petitioners' prayer for prospective relief was not, at the outset, within the District Court's power to grant.

## III

I am concerned by the Court's failure to decide whether, in the circumstances here, petitioners can attack collaterally their convictions under the ordinance. The Court's reticence should not be viewed as endorsing the appropriateness of collateral attack under § 1983 in these or any other circumstances. But this issue was decided by the District Court and, as Mr. Justice Harlan once said in similar circumstances, the Court's remand places the District Court "in the uncomfortable position where it will have to choose between adhering to its present decision—in my view a faithful reflection of this Court's

---

[18] As Mr. Justice Frankfurter stated in his opinion for the Court in *Longshoremen's Union* v. *Boyd*, 347 U. S. 222, 223 (1954): "[A]ppellee contends that the District Court . . . should have dismissed the suit for want of a 'case or controversy,' for lack of standing . . . to bring this action. . . . Since the first objection is conclusive, there is an end of the matter." See *O'Shea* v. *Littleton*, 414 U. S. 488, 504–505 (1974) (BLACKMUN, J., concurring in part).

past cases—or treating the remand as an oblique invitation from this Court to [reverse its decision]." *Scholle v. Hare,* 369 U. S. 429, 434 (1962) (dissenting opinion).

Equally important, the reversal and remand of this case—especially in an opinion stating that "the principles and approach of *Steffel* are applicable" to petitioners' request for declaratory relief—are likely to cause federal courts all over the country to think that *Steffel* must be read as having a far wider application than that decision itself warrants. Such a reading would expand the number and, more importantly, the kinds of occasions in which federal district courts properly can be called upon to issue declarations as to the constitutionality of state statutes. I perceive no reason why we should refrain from deciding the threshold justiciability issue, an issue critical to proper understanding and application of the *Steffel* decision. Again in the words of Mr. Justice Harlan, dissenting from the remand of a case that arose in the wake of *Baker* v. *Carr,* 369 U. S. 186 (1962): "Both the orderly solution of this particular case, and the wider ramifications that are bound to follow in the wake of [*Steffel*], demand that the Court come to grips now with the basic issue tendered by this case." *Scholle* v. *Hare, supra,* at 435.

In sum, I think the Court should resolve the major issues properly before us, issues as to which there is no factual dispute, rather than delay their resolution, impose unnecessary burdens upon the litigants, and risk widespread uncertainty among the federal judiciary.