UNITED AUTO BROKERS, INC., a subsidiary of Car/Puter International Corp., and its licensed auto brokers

v.

Stanley J. PAC, Commissioner of Motor Vehicles of the State of Connecticut, et al.

Civ. No. H–75–195.

United States District Court, D. Connecticut.

Dec. 18, 1975.

**150**

Judith H. Hasenauer, Blazzard, Grodd & Hasenauer, Norwalk, Conn., for plaintiff.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

In this action the plaintiff, United Auto Brokers, Inc., seeks a declaration that certain provisions of Connecticut law either do not apply to its business, or, insofar as they do apply, are unconstitutional. It also seeks an order enjoining the defendants, Stanley J. Pac, the Commissioner of Motor Vehicles, and Carl Ajello, the Attorney General of the State of Connecticut, from enforcing those provisions against it through civil or criminal prosecution.

The defendants have moved for summary judgment pursuant to Rule 56(b), Fed.R. Civ.P., claiming that there is no actual controversy between the plaintiff and the defendants at this time, and that as a result this court is without jurisdiction due to the "case or controversy" restrictions of article III, section 2, of the United States Constitution.

In its unverified complaint, the plaintiff alleges that it is in the business of acting as agent for prospective automobile purchasers. Due to its special expertise, and through its ability to persuade dealers to offer discounts, the plaintiff allegedly can obtain a lower price for an automobile in the area where the consumer lives than could the consumer if he dealt directly with the dealer. In addition, the plaintiff provides alternate services for consumers who wish to purchase an automobile but do not wish to place their order through the plaintiff. For a fee the plaintiff provides the prospective purchaser with a computer printout showing the dealer cost of the automobile he desires to purchase, including the cost of the optional equipment he desires. Armed with this information, the consumer is, theoretically, better able to bargain with the dealer from whom he chooses to purchase his automobile.

In Connecticut, the businesses of selling and repairing automobiles are subject to extensive regulation, both by statute[1] and under regulations promulgated by the Commissioner of the Department of Motor Vehicles. Every new car dealer must obtain a license[2] for which the Commissioner has, by regulation, established the minimum qualifications.[3] The plaintiff takes the position

---

1. Conn.Gen.Stat.Ann. § 14–51 et seq.

2. Conn.Gen.Stat.Ann. § 14–52.

3. Regulations of the Department of Motor Vehicles, § 14–63–2, reads:

   "Requirements for new car dealer. The following minimum requirements for qualification as a new car dealer are established:

   "(a) Previous experience: At least one of the following: (1) In some other line of endeavor; (2) as a former employee of a dealer; (3) as a former member of a firm having a dealer's license.

   "(b) Personal: (1) Two recommendations from former employers or business associates; (2) two credit statements from reputable business firms; (3) (1) and (2) shall be furnished for each member of a firm.

   "(c) Franchise: (1) A contract approved by the parent company; (2) a statement that a contract is in force from a factory or distributor on file with the department of motor vehicles.

   "(d) Place of business: (1) Approved by local authority in accordance with section 14–54 of the general statutes; (2) approved by the commissioner of motor vehicles.

that it is not a "new car dealer" as that term is defined in the regulations.[4] Furthermore, it argues that the State of Connecticut cannot regulate its business as an agent for buyers under the present regulatory scheme without contravening the commerce, due process, and equal protection clauses of the federal constitution.

The plaintiff's initial difficulty in this action is that the defendant Commissioner of Motor Vehicles denies that his Department has yet made the determination that the plaintiff requires a license. In an affidavit submitted with his motion for summary judgment, the Commissioner states that his Department was contacted by an individual who represented himself as being connected with Car-Puter, Inc., the parent corporation of United Auto Brokers, Inc. This individual asked if United Auto Bro-

kers would have to obtain a license in Connecticut. The officer who handled the inquiry informed the caller that he could not make the determination over the phone, but invited him to submit a petition for a declaratory ruling, pursuant to the Connecticut Administrative Procedure Act,[5] and the Department's own regulations.[6] Instead of complying with this invitation, the plaintiff sent the Department a packet of self-laudatory material, consisting mostly of newspaper and magazine reprints and letters from satisfied customers.[7] Understandably, the Commissioner was unable to determine, from that information alone, whether the plaintiff was a "new car dealer." Unfortunately, the Commissioner does not appear to have officially informed the plaintiff, prior to the filing of this action, that his submission was deficient.

"(e) Proper facilities: (1) For the display and storage of new and used motor vehicles; (2) a repair department capable of taking care of at least two motor vehicles simultaneously, exclusive of a grease pit or rack; (3) an office and parts department suitable to conduct business. The requirements of this subsection may be waived for a second or additional license, provided the location for which such license is applied for is adjacent to a location licensed by such applicant under section 14–52 of the general statutes and complies with the other provisions of this regulation.

"(f) Personnel and equipment: (1) At least one mechanic having thorough knowledge of the product handled; (2) sufficient tools and equipment for proper servicing."

4. Regulations of the Department of Motor Vehicles, § 14–63–1, reads:

"(a) 'New car dealer' includes any person, firm or corporation engaged in the business of merchandising new motor vehicles under factory contract who may, incidental to such business, sell used motor vehicles and repair motor vehicles or cause them to be repaired by qualified persons in his employ. He shall be a qualified person and have a suitable and adequate place of business, which shall be determined by the commissioner of motor vehicles."

5. Conn.Gen.Stat.Ann. § 4–176.

6. Regulations of the Department of Motor Vehicles, § 14–137–21, reads:

"Petition for declaratory ruling. The Department of Motor Vehicles will accept a petition for declaratory ruling as to the applicability of any statute or regulation adminis-

tered by the Department of Motor Vehicles in the following form:

"1. A petition stating the factual background of the issue must be in writing and include or have attached thereto a certificate indicating the manner in which and the date on which it is being filed with the Department of Motor Vehicles at the main office in Wethersfield, Connecticut.

"2. The petition shall be signed by the petitioner and shall include his address for purposes of reply.

"3. A petitioner shall serve a copy of the petition on any party who he has reason to believe may not otherwise have knowledge thereof and may fairly have an interest therein. The petition or certificate shall indicate such service therein.

"4. The petition shall state clearly the question of applicability upon which it seeks a ruling.

"5. The petition shall state the position of the petitioner with respect to the question of applicability.

"6. The petition may include an argument in support of the position of the petitioner with such legal citation as may be appropriate."

7. The description of this material in the affidavit sounds suspiciously like the surplusage which clutters the complaint in this action. "A pleading . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Rule 8(a)(2), Fed.R.Civ.P. "Each averment of a pleading shall be simple, concise, and direct." Rule 8(e)(1), Fed.R.Civ.P.

The Commissioner concludes his affidavit with a statement that, without waiving his right to proceed against the plaintiff in the future, should he determine that the plaintiff is a new car dealer:

"[A]s of this point . . . this Department has never taken the position that such licensure is necessary nor has this Department threatened nor sought to impose any sanctions or restraints upon United Auto Brokers, Inc. or Car-Puter." [8]

The plaintiff has produced no counter-affidavits to support the allegation in its complaint that:

"The defendants have threatened that any attempt by plaintiffs to continue to operate their business of placing new car orders for purchasers will bring down upon plaintiffs action by said defendants to prevent such continuance of such business, under the Connecticut General Statutes 14–51, et seq., and of Civil and/or Criminal prosecution."

In its brief in opposition to the motion for summary judgment, the plaintiff offers two items in support of its claim that the Department of Motor Vehicles is threatening it with official action.

The first is a typewritten copy of an article which allegedly appeared in the August 19, 1974 issue of a publication entitled "Automotive News," almost a year before this action was filed.[9] The article purports to quote the then Acting Commissioner of the Department of Motor Vehicles to the effect that he was asking the State Attorney General to investigate the somewhat cryptic "legality of broker operations be labeled illegal." [*sic*][10] The plaintiff is not mentioned by name in the article.

The second item is a purported telephone conversation between one William Webster,

identified as a prospective broker for the plaintiff, and Edward Simmons, a Division Director of the Department of Motor Vehicles. In this conversation, which allegedly occurred in February 1975, six months before this action was filed, Mr. Simmons allegedly told Mr. Webster that the plaintiff's operations were illegal. The plaintiff has not submitted an affidavit by Mr. Webster.

█ The question, then, is whether the plaintiff has sufficiently demonstrated the existence of a case or controversy. The Declaratory Judgment Act, 28 U.S.C. § 2201, must be interpreted in light of article III, section 2 of the Constitution, restricting the jurisdiction of federal courts to "cases or controversies." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). As the Supreme Court stated in *Ellis v. Dyson*, 421 U.S. 426, 434–35, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975):

"A genuine threat must be demonstrated if a case or controversy, within the meaning of Art. III of the Constitution and of the Declaratory Judgment Act, may be said to exist. See *Steffel v. Thompson*, 415 U.S., [452] at 458–460, [94 S.Ct. 1209, 39 L.Ed.2d 505]. See generally *O'Shea v. Littleton*, 414 U.S. 488, 493–99, [94 S.Ct. 669, 38 L.Ed.2d 674] (1974); *Boyle v. Landry*, 401 U.S. 77, 81, [91 S.Ct. 758, 27 L.Ed.2d 696] (1971)."

The requirement that a genuine threat of enforcement be shown is especially appropriate in this case, for, as the plaintiff itself admits, this is not a case where "[T]he challenged statute applie[s] particularly and unambiguously to activities in which the plaintiff regularly engage[s] or [seeks] to engage." [11]

---

**8.** Affidavit of Commissioner Stanley J. Pac, ¶ 17.

**9.** No explanation is given for the plaintiff's failure to submit a copy of the article itself. Due to the disposition of this motion for summary judgment, it is not necessary to consider possible objections to the "article" as evidence. Rule 56(e), Fed.R.Civ.P.

**10.** Memorandum of Plaintiff in Opposition to Summary Judgment, 6.

**11.** *Ellis v. Dyson*, 421 U.S. 426, 447, 95 S.Ct. 1691, 1702 (1975) (Powell, J., dissenting). *Cf. e. g., Doe v. Bolton*, 410 U.S. 179, 188–89, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506–08, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

■ Given these jurisdictional requirements, the affidavit of the Commissioner is determinative. In light of the plaintiff's failure to seek a definitive declaration of the coverage of these statutes and regulations from the Department of Motor Vehicles, pursuant to its procedure and in response to its invitation, the submission of an unauthenticated, year-old magazine article and an unsworn, hearsay report of a purported telephone conversation cannot suffice to demonstrate a real and immediate threat of enforcement of the regulatory scheme in question.

The defendants' motion for summary judgment is granted. There presently exists no case or controversy, and as a result this court lacks jurisdiction. In light of this holding it is unnecessary to convene a three-judge district court pursuant to 28 U.S.C. § 2281. The complaint is dismissed.

SO ORDERED.