*1165 GOULD, Circuit Judge,
with whom CLIFTON, IKUTA, and N.R. SMITH, Circuit Judges, join, dissenting:
Maldonado for years has not been in touch with the lawyer who advocated before us. In such circumstances I believe that our proceeding to render a decision on the merits is essentially to give an advisory opinion. With the party not before us, we are engaging in what might be called “ghost ship” ruling, with the case careening along unmanned by the party seeking relief. We thus have the “ghost” of the prior controversy but not a real and actual controversy. The Supreme Court since the early days of our country has made clear that it is not the province of federal courts to give advisory opinions, even in matters of importance to society. See Flast v. Cohen, 392 U.S. 83, 96 n. 14, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (“The rule against advisory opinions was established as early as 1793.”); see generally William R. Casto, The Early Supreme Court Justices’ Most Significant Opinion, 29 Ohio N.U. L. Rev. 173 (2002) (detailing the history of the Jay Court’s 1793 letter to George Washington declining a request for an advisory opinion).
As the majority correctly recites, mootness is a jurisdictional issue we must address. See Blandino-Medina v. Holder, 712 F.3d 1338, 1341 (9th Cir.2013). But I regret that after this recognition, the balance of what the majority says on jurisdiction is not in my view correct. In Ellis v. Dyson, the Supreme Court confronted a case in which counsel for petitioners had not had contact with their clients for a year and the petitioners were not informed regarding the progress of the litigation. 421 U.S. 426, 434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975). The Court expressed “reservations ... as to whether a case or controversy” existed. Id. The Court said that unless the petitioners were found by the time the matter was considered on remand, “it [was] highly doubtful that a case or controversy could be held to exist; it is elemental that there must be parties before there is a case or controversy.” Id. Although the statement in Ellis v. Dyson on which I rely might be argued to be a dictum, we have square precedent stating that we give great respect even to dicta of the United States Supreme Court. See United States v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000) (en banc). Further, what the Court said in Ellis is right on the money so far as I am concerned.
The majority argues that there is a clear indication that Maldonado is in the country because he renewed a driver’s license after the date of his removal. But even if he was here in 2010, that does not necessarily mean that he remained here to the present day. Because I do not believe our court may properly rule on cases where a party is not present — either in person or through a lawyer who is in reasonable communication with the party — I would dismiss this case as moot for lack of a present justiciable controversy under Article III.
But even if the case is not moot in a constitutional sense, we should dismiss under the doctrine of prudential mootness, which allows a court to dismiss an appeal, even if not technically moot, “if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief.” Deutsche Bank Nat’l Trust Co. v. F.D.I.C., 744 F.3d 1124, 1135 (9th Cir.2014) (quoting Hunt v. Imperial Merchant Servs., Inc., 560 F.3d 1137, 1142 (9th Cir.2009)); see also Ali v. Cangemi, 419 F.3d 722, 723-24 (8th Cir.2005) (dismissing an appeal as prudentially moot where an immigrant’s whereabouts were unknown after he failed to notify immigration authorities of his change of address).
*1166 We have applied similar prudential reasoning in immigration cases involving the fugitive disentitlement doctrine. For example, in Antonio-Martinez v. INS we said:
Those who disregard their legal and common-sense obligation to stay in touch while their lawyers appeal an outstanding deportation order should be sanctioned. The prospect of disentitlement provides a strong incentive to maintain contact with the INS and counsel, rather than taking one’s continued presence in the country for granted.... By failing to report his change of address to either his lawyer or the INS for an extended period of time, [petitioner] has effectively put himself beyond the jurisdiction of the court. Because no one has any clue where [petitioner] is, his petition has the same “heads I win, tails you’ll never find me” quality that justifies disentitlement in other contexts.
317 F.3d 1089, 1093 (9th Cir.2003). Although it might be argued that Maldonado’s compliance with his removal order, even if he later returned to the United States, distinguishes his case from the petitioner’s in Antonio-Martinez, I think the two cases are fundamentally similar in the most important respects. We cannot give Maldonado an effective remedy, just as none could be given to the petitioner in Antonio-Martinez. Had today’s majority reached a conclusion that would deny him any relief, Maldonado would remain as unaffected by it as he is by the majority’s granting the petition as they do. I think that our prudential mootness doctrine can be adapted here to function like the fugitive disentitlement doctrine.
There are many actual or potential litigants in our system who have not yet been removed and who can petition for review on the merits issues presented in this case. Moreover, there will be others who will return after removal, and who can present the same issues while staying in contact with their counsel. We don’t need to engage in “ghost ship” jurisprudence to give a ruling in a case where there is no one on board the ship of the dispute presented. Instead, we should limit invoking the awesome power of the federal courts to decide important immigration law matters to cases where parties also remain within the effective reach of our court’s jurisdiction so that we can give meaningful relief. We should await such a case before deciding the issue that the majority does today. I respectfully dissent.