ST. MARTIN'S PRESS, INCORPORAT-ED, Crutcher and Newman Book Sellers, Inc., and Patricia Ince, Plaintiffs,

v.

Hugh L. CAREY, Individually and as Governor of the State of New York, Robert M. Morgenthau, Individually and as District Attorney of the County of New York of the State of New York, Carl A. Vergari, Individually and as District Attorney of the County of Westchester of the State of New York, and Henry F. O'Brien, Individually and as District Attorney of the County of Suffolk of the State of New York, Defendants.

No. 77 Civ. 5256.

United States District Court, S. D. New York.

Nov. 28, 1977.

**1198**

Szold, Brandwen, Meyers & Altman, New York City, for plaintiff St. Martin's Press, Inc.; Roy Gainsburg, New York City, of counsel.

Norwick, Raggio, Jaffe & Kayser, New York City, for plaintiffs Crutcher and Newman Book Sellers, Inc. and Patricia Ince; Kenneth P. Norwick, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of N.Y., New York City, for defendants Hugh L. Carey and Robert M. Morgenthau; John M. Farrar, New York City, of counsel.

Henry F. O'Brien, Dist. Atty. of Suffolk County, Riverhead, N.Y., for defendant Henry F. O'Brien; Mark D. Cohen, Steven A. Hovani, Riverhead, of counsel.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N.Y., for defendant Carl A. Vergari; Joseph Aviv, Hartsdale, N.Y., of counsel.

ROBERT J. WARD, District Judge.

Plaintiff St. Martin's Press, Incorporated ("St. Martin's") is the publisher of a book entitled *Show Me!*, and plaintiffs Crutcher and Newman Book Sellers, Inc., and Patricia Ince ("booksellers") are in the business of selling books at retail, including the book *Show Me!*. They instituted this action on October 28, 1977, seeking declaratory and injunctive relief. On the same date, they brought on an order to show cause why the defendants should not be preliminarily enjoined from enforcing newly enacted § 263.-15 of the Penal Law of New York against them or their employees with respect to the book *Show Me!*.

Claiming violation of 42 U.S.C. § 1983 and the first and fourteenth amendments to the United States Constitution, plaintiffs base jurisdiction on 28 U.S.C. § 1343 and 28 U.S.C. § 1331(a). They allege that § 263.15, which is entitled "Promoting a sexual performance by a child,"[1] prohibits the publication, distribution, advertisement or sale of the book *Show Me!* by imposing up to

---

1. The statute reads in pertinent part as follows:

 *§ 263.05 Use of a child in a sexual performance*

 A person is guilty of the use of a child in a sexual performance if knowing the character and content thereof he employs, authorizes or induces a child less than sixteen years of age to engage in a sexual performance or being a parent, legal guardian or custodian of such child, he consents to the participation by such child in a sexual performance.

 Use of a child in a sexual performance is a class C felony.

 *§ 263.10 Promoting an obscene sexual performance by a child*

 A person is guilty of promoting an obscene sexual performance by a child when, know-ing the character and content thereof, he produces, directs or promotes any obscene performance which includes sexual conduct by a child less than sixteen years of age.

 Promoting an obscene sexual performance by a child is a class D felony.

 *§ 263.15 Promoting a sexual performance by a child*

 A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than sixteen years of age.

 Promoting a sexual performance by a child is a class D felony.

seven years imprisonment upon any person who publishes, distributes, advertises or sells *Show Me!* in the State of New York.

Defendants are the Governor of New York, the District Attorney of New York County where St. Martin's has its principal place of business, and the District Attorneys of Westchester and Suffolk [2] Counties where the booksellers have their principal places of business, or reside, own and operate their respective bookstores.

Defendant Carl A. Vergari, District Attorney of Westchester County, joined by the other defendants, has cross-moved to dismiss for lack of a justiciable controversy. Argument on the motions was held by the Court on November 3, 1977.[3] For the reasons hereinafter stated, plaintiffs' motion for a preliminary injunction is granted and defendants' cross-motion to dismiss is denied.

### FACTS

Section 263.15 which became effective on November 9, 1977 provides in part:

A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than sixteen years of age.[4]

Plaintiffs assert that § 263.15 is unconstitutionally overbroad on its face because it applies to motion pictures or photographs whether or not they are obscene,[5] in violation of the principle that where first amendment interests are involved, regulations which proscribe both protected and unprotected expression are invalid. In addition, plaintiffs assert that § 263.15 is unconstitutional as applied to this book for three reasons. First, plaintiffs argue that § 263.15 is unconstitutional as applied to *Show Me!* because *Show Me!* is not obscene, but is a serious, artistic, educational and scientific book designed for parents to use in educating their children about the emotional and physical aspects of sex. Second, insofar as the statute's purpose is to prevent New York children from being exploited or otherwise affected by their unwitting involvement in sexual enterprises,[6] it can have no rational application to *Show Me!*, which was photographed entirely in Munich, Germany between 1969 and 1973, where the book was first published. Therefore, in making criminal the sale or distribution of such a book New York has exceeded its police powers and thereby denied plaintiffs substantive due process. Third, plaintiffs contend that § 263.15 is unconstitutional as applied to *Show Me!* because it is violative of the right of parents to receive and distribute such information. Therefore, the statute infringes the constitutionally protected right of privacy of parents to teach their children about such personal matters as sex.[7]

---

**2.** On November 8, 1977, Patrick Henry became the successor in office to defendant Henry F. O'Brien. Pursuant to Rule 25(d), Fed.R.Civ.P., Patrick Henry is ordered substituted as defendant, effective upon his taking office.

**3.** At the conclusion of the argument plaintiffs moved for a temporary restraining order, which was denied.

**4.** The definition of promote includes "sell," "publish," "distribute" and "advertise." § 263.00(5). "Performance" includes a motion picture or photograph. § 263.00(4). "Sexual conduct" includes actual or simulated "sexual intercourse," "masturbation," or "lewd exhibition of the genitals." § 263.00(3).

**5.** It is apparent that § 263.15 was intended to cover non-obscene material, for the immediately preceding section, § 263.10, is identical to

§ 263.15, except for the insertion of the word obscene. See note 1, *supra*.

**6.** The legislative declaration to the statute states in pertinent part:

The legislature finds that there has been a proliferation of exploitation of children as subjects in sexual performances. The care of children is a sacred trust and should not be abused by those who seek to profit through a commercial network based upon the exploitation of children. The public policy of the state demands the protection of children from exploitation through sexual performances.

**7.** In view of the Court's conclusion, *infra*, that plaintiffs' arguments on facial unconstitutionality and their first two arguments on the unconstitutionality of § 263.15 as applied raise sub-

## 1200

### RIPENESS

Defendants contend that this case is not ripe for adjudication. It is undisputed that defendants have not prosecuted, charged, arrested or investigated plaintiffs' activities with respect to *Show Me!*. This is not surprising since § 263.15 had not taken effect at the time suit was brought and argument was held on the preliminary injunction motion. Yet, if plaintiffs' injuries are only "imaginary," *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or amount to "nothing more than speculation about the future," *Boyle v. Landry*, 401 U.S. 77, 81, 91 S.Ct. 758, 760, 27 L.Ed.2d 696 (1971), the case is not ripe. The problem, then, is to determine whether there is a genuine risk of prosecution notwithstanding the lack of activity on the part of the defendants.

Analysis of the ripeness cases involving attacks on criminal laws reveals three types of fact patterns. In the first category, state officials have taken some kind of action against the plaintiffs, ranging from, for example, ongoing prosecution in *Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to arrest and seizures of materials deemed obscene but no prosecution in *Black Jack Distributors, Inc. v. Beame*, 433 F.Supp. 1297 (S.D.N.Y.1977), to threat of arrest and prosecution, coupled with the prosecution of the federal plaintiff's companion in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Further, a mere threat to enforce a law against the federal plaintiff sufficed to make *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), ripe. Moreover, a prosecuting official's affirmative response to an individual's inquiry regarding the prospect of prosecution has been held to constitute a threat sufficient to make a federal challenge ripe. *Thoms v. Heffernan*, 473 F.2d 478 (2d Cir. 1973), *vacated and remanded for reconsideration in light of Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 . . .

and *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (in addition to responses from officials, other persons previously had been prosecuted in connection with similar activities). Finally, an individual's general inquiry of prosecutors regarding the constitutionality of a law and whether the state would enforce it, and the prosecutors' general response that public officials must obey the law and are duty bound to enforce the law, were held sufficient to make a federal court challenge ripe. *Resident Participation of Denver, Inc. v. Love*, 322 F.Supp. 1100, 1102 (D.Colo.1971) (3-judge court).

In the second category of cases, no action of any kind had been taken against the federal plaintiffs by state officials; rather, other persons had been the subject of some prosecutorial action under the challenged, or similar law. *E. g., Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (history of enforcement of the predecessor to the statute under attack was sufficient to permit federal plaintiffs to challenge the new law even though it had not yet been enforced against anyone); *Naprstek v. City of Norwich*, 545 F.2d 815 (2d Cir. 1976) (56-year history of enforcement of the city's curfew ordinance against other persons sufficed to make plaintiffs' suit ripe).

The final category of cases involves challenges to statutes which have not been enforced nor threatened to be enforced. In *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), where the injury with which plaintiffs were imminently threatened was the withdrawal of pupils from their schools as a result of an Oregon law making it a crime for parents to send their children to private schools, the Supreme Court affirmed a federal court grant of a preliminary injunction restraining enforcement of the statute even though it was not to take effect, and there clearly would be no prosecutions thereunder, until more than one year after the Supreme

---

stantial questions going to the merits, the Court will not discuss plaintiffs' privacy argument and whether they have standing to raise it.

Court's decision. Further, in *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), a high school teacher was permitted to attack Arkansas' anti-evolution law even though there had been no recorded prosecutions since the law's adoption in 1928, and it was therefore "possible that the statute [was] presently more of a curiosity than a vital fact of life." 393 U.S. at 102, 89 S.Ct. at 269.

■ In determining whether a genuine risk of prosecution exists, one indicium of a concrete controversy is the clarity of the application of the challenged statute to the plaintiff's conduct. Where it is unclear if the law covers that conduct, as in *Steffel v. Thompson, supra,* it is more essential for there to be overt action by the prosecuting officials towards the plaintiffs; conversely, where the statute clearly applies to plaintiffs' conduct, as this Court finds *infra,* no prosecutorial action is necessary. *E. g., Doe v. Bolton, supra; Epperson v. Arkansas, supra; Pierce v. Society of Sisters, supra. See generally Ellis v. Dyson,* 421 U.S. 426, 447–48, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975) (Powell, J., dissenting).

■ As to the applicability of § 263.15 to these plaintiffs, it is undisputed that plaintiffs have published, distributed, sold, or advertised *Show Me!* in the past and desire to do so in the future. Therefore, if the content of *Show Me!* comes within the statute's definitions of sexual conduct, etc., § 263.15 would be applicable to plaintiffs. Plaintiffs concede that *Show Me!* contains nude photographs of children under the age of sixteen, is explicit in its depiction, through children, of certain aspects of hu-

man sexuality, and at least one of the photographs meets the statutory definition of sexual conduct. Therefore they assert that *Show Me!* comes within the clear language of § 263.15 and so that section is plainly applicable. Moreover, plaintiffs contend that the legislative history confirms that § 263.15 was intended to apply to *Show Me!* and even suggests that that section may in part have been specifically directed against *Show Me!*[8] Without relying on the sketchy and inconclusive legislative history, the Court is in a position to conclude that *Show Me!* does come within the language of § 263.15 and therefore the absence of affirmative conduct on the part of defendant prosecutors is not dispositive.

Although § 263.15 is clearly applicable to *Show Me!*, if there were a state policy of non-enforcement of the statute, preliminary injunctive relief would not be granted. *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). However, because § 263.15 is "recent and not moribund," *Doe v. Bolton,* 410 U.S. at 188, 93 S.Ct. 739, there is neither a policy of non-enforcement nor a pattern of enforcement. Moreover, § 263.15 appears to be a unique attempt to control child abuse, and therefore there is no history of enforcement or non-enforcement of similar statutes upon which to gauge the likelihood of prosecution. Accordingly, it is necessary to evaluate the general reaction *Show Me!* has evoked historically and in light of that history to assess defendants' position with respect to *Show Me!*.

*Show Me!* would appear to be a controversial, and to some, an offensive book. Obscenity prosecutions, all unsuccessful,

8. Plaintiffs' belief that § 263.15 was enacted with the purpose of stopping the sale of *Show Me!* is based largely on two occurrences. The first was an interview conducted by a newspaper reporter with counsel for the sponsor of the bill as reported in a *New York Times* article of June 29, 1977 prior to the signing of the bill by the Governor. Counsel is reported to have said that the bill could be used to ban books containing the prohibited conduct, even if the books were used for literary or educational purposes. He allegedly said that *Show Me!* was in apparent violation of the bill. The other indication of legislative intent to censor *Show*

*Me!* is a report of a June 1, 1977 meeting of the Senate Codes Committee which was attended by counsel for plaintiffs. Copies of *Show Me!* were observed and discussed by the senators, and more than one senator allegedly expressed the view that the book should not be sold in his district. Even apart from the hearsay nature of this "legislative history," the Court finds it insufficient to show that § 263.15 was enacted with the legislative intent to ban specifically the sale of *Show Me!*. Of course, plaintiffs need not demonstrate that the statute was aimed specifically at them.

have been brought in Massachusetts, Oklahoma and New Hampshire, as well as Toronto, Canada; under § 263.15 a prosecution could be brought notwithstanding lack of obscenity.

Defendant prosecutors would have the Court ignore the coercive nature of this statute: that the clearly applicable serious penal sanctions necessarily have externally induced plaintiffs to take reasonable responsive conduct, as the legislature apparently has intended. Instead, they accuse plaintiffs of legal paranoia, contending that plaintiffs' fears are unjustified inasmuch as there are no investigations pending in their respective offices with respect to *Show Me!*. They characterize plaintiffs' termination of activities with respect to *Show Me!* rather than risk prosecution for violating § 263.15 as "unilateral cessation" of activities, and "a self-imposed Hobson's choice," induced by "nothing more than speculation about the future." However, at oral argument, none could tell the Court whether photographs taken in Germany between 1969 and 1973 would be outside the scope of § 263.15; more importantly, none could or would dismiss out of hand the possibility of a prosecution being brought against plaintiffs. This non-committal posture stemmed in part from the policy some of the defendants have against rendering advisory opinions; in addition, some of the defendant prosecutors pointed out that although their office may not be planning a prosecution, they could not foreclose the possibility of a private citizen initiating a complaint. Under these circumstances, it cannot be said "that the state maintains a policy of non-prosecution." *Resident Participation of Denver, Inc. v. Love*, 322 F.Supp. at 1107. Rather, defendants' responses are essentially equivalent to those given by the prosecutors in the *Love* case, *supra, i. e.*, that prosecuting authorities have a duty to enforce the law as written. Therefore, as in *Love*, although defendant prosecutors have not themselves threatened prosecution, their inability to obviate the threat indicates that the threat is not chimerical. Moreover, this threat seems even greater when gauged in light of the climate in which the statute takes effect and in light of the reactions previously provoked by *Show Me!*. *Cf. Baird v. Bellotti*, 393 F.Supp. 847, 852 (D.Mass.1975) (3-judge court), *vacated and remanded on other grounds*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) ("[t]here will be extensive pressure upon [prosecutors] to prosecute in case of a violation, and . . . it is highly improbable that they would not immediately respond to such pressures"). In view of these circumstances, the Court finds that there is at least a concrete risk of a prosecution resulting from a private citizen's initiating a complaint. *See Epperson v. Arkansas, supra; Thoms v. Heffernan, supra; Resident Participation of Denver, Inc. v. Love, supra.*

Of perhaps most importance in assessing the ripeness of a case is "the actual hardship to the litigants of denying them the relief sought." *Poe v. Ullman, supra*, 367 U.S. at 509, 81 S.Ct. at 1759. The Court is not presented solely with a subjective chill of first amendment rights, *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), but with a "present and very real" injury, *Pierce v. Society of Sisters, supra*, 268 U.S. at 536, 45 S.Ct. 571, inasmuch as § 263.15 has the effect of abridging first and fourteenth amendment rights and preventing St. Martin's, and to a lesser extent the booksellers, from "engaging in activities that could be an important source of their livelihood." *Abele v. Markle*, 452 F.2d 1121, 1125 (2d Cir. 1971). See discussion of irreparable harm *infra*. *See generally* Note, Implications of the Younger Cases for the Availability of Federal Equitable Relief When No State Prosecution Is Pending, 72 *Colum.L.Rev.* 874 (1972).

For the foregoing reasons the Court concludes that the controversy is ripe for adjudication and denies defendants' cross-motion for dismissal.

## PRELIMINARY INJUNCTION STANDARD

The standard that plaintiffs must meet to obtain a preliminary injunction is: 1) a clear showing of possible irreparable

harm and probable success on the merits; or 2) a clear showing of possible irreparable harm and sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the plaintiffs. *Triebwasser & Katz v. AT&T*, 535 F.2d 1356, 1359 (2d Cir. 1976); *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).

### 1. Irreparable Injury

In view of the applicability of § 263.15 to *Show Me!*, plaintiffs contend that they face two equally undesirable options: cease publication and sale of *Show Me!* or risk a felony prosecution and potential incarceration of up to seven years for continuing their activities with respect to the book. As a result, pending a final decision on the merits, St. Martin's has determined to cease distribution and sale of the book in New York and advise its distributors and bookstore customers of the risk of prosecution under § 263.15. Similarly, the booksellers have determined to stop selling or carrying the book absent preliminary injunctive relief. One of the distributors of *Show Me!*, Doubleday & Company Inc., has advised St. Martin's that in the absence of preliminary injunctive relief, it will cease distribution of the book to Doubleday bookstores throughout New York State and will return the copies on hand to St. Martin's. St. Martin's states that all New York booksellers with whom it has discussed the matter have said they will refuse to display or sell the book once § 263.15 has taken effect.

Plaintiffs assert that the losses occasioned by their decisions to cease all activities with respect to *Show Me!* are infringement of the first amendment rights of the authors of the book, booksellers, parents, educators, and other customers; substantial economic injury to plaintiffs, particularly St. Martin's; and infringement of fourteenth amendment substantive due process rights.

■ With respect to the first of these, corporations are not guaranteed rights of free speech under the first and fourteenth amendments. *Hague v. C. I. O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Gajon Bar & Grill, Inc. v. Kelly*, 508 F.2d 1317, 1322 (2d Cir. 1974). However, corporate plaintiffs have standing to raise the first amendment rights of persons not before the Court, otherwise those rights would, in all probability, never be protected. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64–65 n.6, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) (book publisher permitted to raise rights of distributors); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (corporation facing economic injury could raise constitutional rights of parents to direct the education of their children). In addition, plaintiff Ince, an individual bookseller, has standing to raise the loss of her own first amendment rights.

■ The Second Circuit has recognized the dilemma facing plaintiffs who must choose between giving up their first amendment rights and violating the law. *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1160 (2 Cir. 1974). The former option "involves a deprivation of [plaintiff's] and the public's first amendment rights to show and to view films, and in itself constitutes irreparable injury justifying injunctive relief, because there is no means to make up for the irretrievable loss of that which would have been expressed." On the other hand, the latter option "may cause, as it is alleged to cause, irreparable injury both economic . . . and personal (the freedom to exercise first amendment rights without genuine fear of prosecution)." *See also Cobb v. Beame*, 402 F.Supp. 19, 25–26 (S.D.N.Y. 1975). Due to the clear applicability of § 263.15 and its severe penal sanctions, plaintiffs face the same dilemma. As noted above, had they chosen to violate § 263.15 and await prosecution they and their employees would have risked substantial prison terms of up to seven years. Thus, they effectively were forced to cease publication and sale of *Show Me!*. The consequence of their decisions is the irretrievable loss of the first amendment rights of the authors, booksellers and readers. *414 Theater Corp.*

*v. Murphy, supra.* "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). Thus, assuming a violation of the first amendment, plaintiff Ince has suffered and continues to suffer irreparable injury by virtue of the deprivation of her first amendment rights.

The corporate plaintiffs cannot rely on the deprivation of the first amendment rights of third parties to make their showing of irreparable harm. However, that does not mean that they cannot suffer irreparable injury of their own. *Compare Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) *with Gajon Bar & Grill, Inc. v. Kelly,* 508 F.2d 1317 (2d Cir. 1974), discussed in *Black Jack Distributors, Inc. v. Beame, supra,* 433 F.Supp. at 1308 n.26. St. Martin's asserts that as a consequence of being forced not to publish, distribute or sell *Show Me!* it will lose the profits it would have received had it continued to sell the book,[9] and this loss will be irreparable due to the unlikelihood of ever recouping the lost sales even if the statute is invalidated at some later date. In addition, St. Martin's will incur the cost of buying back the copies of *Show Me!* currently in the bookstores.[10] The booksellers assert that they anticipate some economic loss as a result of the removal of *Show Me!* from their shelves. The Court finds that plaintiff St. Martin's has suffered and will continue to suffer substantial economic injury.[11] This injury coupled with the loss of first amendment rights of others constitutes irreparable harm. *E. g., Doran v. Salem Inn, Inc., supra; Black Jack Distributors, Inc. v. Beame, supra.*

■ Furthermore, all three plaintiffs assert a deprivation of their rights to substan-

tive due process. Both individuals and corporations are protected by that clause of the fourteenth amendment, *Grosjean v. American Press Co.,* 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936), and therefore all plaintiffs appear to have standing to assert this alleged deprivation. Assuming such a deprivation, the infringement of plaintiffs' property rights and Ince's first amendment rights would constitute irreparable injury to their due process rights. *Cf. Pierce v. Society of Sisters, supra.*

## 2. Merits

■ In their facial attack on § 263.15 plaintiffs claim that it is overbroad since it forbids the publication, sale, etc. of photographs or moving pictures without regard to whether they are obscene. Since plays, motion pictures and photographs are protected forms of expression, *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 502, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (motion pictures); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557–58, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (live drama), any restriction upon their dissemination must be carefully tailored in order to ensure full protection of first amendment rights. *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Although some regulation of non-obscene motion pictures and photographs of the sexual conduct of children might be permissible, *see Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (upheld zoning ordinances regulating, not banning, the location of adult movie theatres and bookstores irrespective of whether the movies and books were obscene); Goldman, A Doctrine of Worthier Speech: *Young v. American Mini Theatres, Inc.,* 21 *St. Louis U. L. J.* 281 (1977), the use of felony statutes to prohibit dissemination of such mate-

---

9. St. Martin's states that since its publication in April, 1975, it has sold approximately 30,000 copies of the book in New York State, netting about $80,000. Based on past years, St. Martin's anticipates increased sales during the Christmas season.

10. This is estimated to be $10,000.

11. The Court finds that the economic loss to the booksellers is not substantial. Therefore, they cannot rely on their economic injury to prove irreparable harm. Neither the corporate nor individual booksellers need to rely on their economic injury, however, as they each have separate bases of irreparable harm.

rial is constitutionally suspect. *Young v. American Mini Theatres, Inc., supra; see Smith v. United States*, 431 U.S. 291, 311, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977) (Stevens, J., dissenting); *cf. Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (ordinance prohibiting nudity in drive-in theatres where the screen was visible from the street held invalid as overbroad). Therefore, there is a serious question as to the facial constitutionality of § 263.15.

Plaintiffs' related claim that § 263.15 is unconstitutional as applied to ·*Show Me!* because *Show Me!* is not obscene likewise raises serious questions. As stated earlier, the book clearly appears to fall within the proscription of § 263.15 and it does not appear to be obscene under the current test of obscenity, *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which requires, *inter alia*, that the work, taken as a whole, lack serious literary, artistic or scientific value. Courts in three states have already so held.[12] Although under the *Miller* test some materials which are not obscene vis-a-vis adults may nonetheless be proscribed as obscene for children; *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), § 263.-15 is not so limited in scope.[13]

■ The argument most persuasive to the Court at this time is that the statute as applied to *Show Me!* denies substantive due process in making criminal the dissemination of photographs of children taken outside the United States some years before the effective date of the statute.[14] Where a statute affects such fundamental rights as are at stake in this case, it "must be narrowly drawn to express only the legitimate state interests at stake," *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973), and to foster them by the least drastic means possible, *Shelton v. Tucker, supra*, 364 U.S. at 488, 81 S.Ct. 247. While New York's interest in protecting children from exploitation is both legitimate and important, the question remains whether it has pursued rational and least drastic means for effectuating that interest.[15]

The New York legislature may have decided that it is too difficult if not impossible to stop this exploitation of children by going after only those who produce the photographs and movies, and that the most expeditious if not the only practical method of law enforcement is to dry up the market for this material by imposing severe criminal penalties on those promoting, distributing, advertising and selling the product. If so, the Court believes there is a serious question whether the state, in·choosing to punish publishers, distributors, advertisers and booksellers for their activities with respect to a non-obscene book, has chosen the least drastic means of accomplishing its goal consistent with preserving first amendment rights.

The legislature may also have concluded that to accomplish § 263.15's primary purpose of protecting New York children, it is necessary to dampen the demand for child pornography because a large consumer demand for this product could put pressure on producers of the material to utilize New York children. To forestall such an eventuality, demand must be reduced by squeezing

12. *Droney v. A Book Named "Show Me!,"* No. 75–6471 (Superior Ct. Middlesex County, Mass. 1976); *New Hampshire v. Neilson* (Portsmouth Dist.Ct.N.H.1976); *Oklahoma v. Robinson*, No. Crim. 76–1274 (Dist.Ct.Okla.1976).

13. *See* Legislative declaration § 1 quoted in note 6, *supra*.

14. The Court recognizes that federal invalidation of statutes on substantive due process grounds is disfavored and uncommon. See *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, the substantive due process argument here does not attack the validity of the statute *per se*, but merely its application to *Show Me!*, a German publication photographed prior to the enactment of § 263.15. Thus, were plaintiffs to succeed on this ground, the statute itself would be unaffected. Therefore, this is the narrowest of plaintiffs' claims in terms of impact on the state.

15. The Court is in the dark in trying to evaluate the state's interests and the means chosen to effectuate those interests inasmuch as defendants did not address this issue.

suppliers, the latter to be accomplished by prohibiting all photographs containing the proscribed conduct, regardless of where they were photographed, the nationality of the children, or whether the content of the book is in fact child pornography. The Court believes there is a serious question as to whether the legislature could rationally hypothesize such a consequence from the dissemination of a book like *Show Me!*, and there is a serious question as to whether going after demand would be a legitimate means of attacking the problem of child abuse, particularly when it entails suppressing an arguably non-obscene book.[16]

### 3. *Balance of Hardships*

Assuming that plaintiffs have demonstrated only serious questions going to the merits, the Court will weigh the balance of hardships. The immediate and permanent harm to plaintiffs which would result from denial of an injunction has already been discussed. The temporary harm to defendants which would result from enjoining future state prosecutions during the pendency of this action was described by Justice Rehnquist, writing for the majority, in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975):

> Although only temporary, the injunction does prohibit state and local enforcement activities against the federal plaintiff pending final resolution of his case in the federal court. Such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger*.

It is important to note that notwithstanding the quoted language, *Doran* upheld the grant of a preliminary injunction.

Plaintiffs in *Doran* attacked an ordinance which prohibited topless dancers in their

bars under penalty of a $500 fine for each violation. They alleged that absent preliminary relief they would suffer economically and perhaps go bankrupt. Except for the degree of economic hardship, the plaintiffs before this Court risk more of a hardship than those in *Doran*. Violation of § 263.15 subjects the violator to a felony prosecution and potential incarceration of up to seven years, rather than a fine. Therefore, the consequences of continuing to exercise first amendment rights are in some ways more severe. Moreover, *Show Me!* appears to be a book fully protected under the first amendment, while "the customary 'barroom' type of nude dancing may involve only the barest minimum of protected expression." *Doran v. Salem Inn, Inc.*, 422 U.S. at 932, 95 S.Ct. at 2568. Accordingly, if the balance of hardships favored plaintiffs in *Doran a fortiori* it favors plaintiffs here.

Furthermore, the grant of temporary relief to plaintiffs will not unduly hamper the state, for the scope of relief is limited in that it will apply solely to § 263.15, leaving the book open to prosecution under § 263.-10. In addition, temporary relief will not preclude prosecutions under § 263.15 against books other than *Show Me!*. See generally *414 Theater Corp. v. Murphy*, 499 F.2d 1155, 1162 (2d Cir. 1974).

Accordingly, the Court finds that the balance of hardships tips decidedly in plaintiffs' favor.

### COMITY

*Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), made it clear that the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requiring federal courts to refrain in most circumstances from interfering with state laws when a state proceeding is pend-

---

**16.** It appears that the legislature also may have intended to go after demand because it

> further finds that the sale of these movies, magazines and photographs depicting the sexual conduct of children to be so abhorrent to the fabric of our society that it urges law enforcement officers to aggressively seek out and prosecute both the peddlers of children

and the promoters of this filth by vigorously applying the sanctions contained in this act. Legislative declaration § 2. It appears that the legislature could not consistently with the first amendment outlaw non-obscene materials which it found distasteful. *Kingsley Pictures Corp. v. Regents*, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959).

ing, do not apply in the absence of state proceedings. "Requiring the federal courts totally to step aside when no state criminal prosecution is pending . . . would turn federalism on its head." *Steffel v. Thompson,* 415 U.S. at 472, 94 S.Ct. at 1222. The reason why *Younger* did not apply is because the *Younger* concern with avoiding disruption and duplication of state proceedings and calling into question the state judiciary's ability and willingness to deal with constitutional issues has no application when no state judicial proceeding is pending. *Id.* 415 U.S. at 462, 94 S.Ct. 1209. Therefore, although the *Steffel* exception to *Younger* applied only to declaratory relief, *Doran v. Salem Inn, Inc., supra,* extended *Steffel* to permit the grant of a preliminary injunction against the enforcement of a state law when no state proceeding is pending. *Accord, Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (upheld grant of permanent injunctive relief). Thus, the Court need not stay its hand under *Younger* principles.

 Nor must the Court abstain under the *Pullman* abstention doctrine, *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), for when the meaning and applicability of the statute is clear it is not necessary to give the state courts the first chance to declare their state statutes unconstitutional. *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Naprstek v. City of Norwich,* 545 F.2d 815 (2d Cir. 1976). This is particularly true where, as here, a facial attack is made on first amendment grounds. *Citizens for a Better Environment, Inc. v. Nassau County,* 488 F.2d 1353, 1362 (2d Cir. 1973). "When such important national rights as first amendment freedoms are at stake, there 'should not be the slightest risk of nullification by state process' . . . at least where the individual has chosen a federal forum to protect them." *Thoms v. Heffernan, supra,* 473 F.2d at 486 (citations omitted). Moreover, should the Court refrain from acting now plaintiffs may be precluded from seeking federal relief under *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 319

(1975), should a state prosecution be brought before substantial progress is made on the merits of this case. Accordingly, the Court believes that principles of comity do not require this Court to refrain from granting preliminary injunctive relief.

## CONCLUSION

Having made "a realistic appraisal of the total circumstances to determine whether the prospect of enforcement of the statute is 'chimerical' . . . or 'concrete'," *Baird v. Bellotti, supra,* 393 F.Supp. at 852, and determined that they are concrete, the Court will not place the plaintiffs "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what [they believe] to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson, supra,* 415 U.S. at 462, 94 S.Ct. at 1217. To require plaintiffs to await overt prosecutorial action against them is contrary to the teachings of *Epperson v. Arkansas, supra,* and *Pierce v. Society of Sisters, supra,* which hold that where the clear terms of a statute unmistakably threaten first amendment rights, an attack on the statute is ripe.

 The Court recognizes the gravity of injunctive relief, even temporary, directed at state officials responsible for enforcing the law, *Doran v. Salem Inn, Inc., supra,* and that such relief can be justified only where "exceptional circumstances" exist, *Wooley v. Maynard, supra,* 430 U.S. at 712, 97 S.Ct. 1428, *quoting Spielman Motor Co. v. Dodge,* 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). Given the apparent overbreadth problems of § 263.15 in its coverage of non-obscene expression, the fact that *Show Me!* may be fully protected by the first amendment, the irreparable harm to first and fourteenth amendment rights by the removal of *Show Me!* from the marketplace, and the concrete economic injury to the plaintiffs, the Court finds the "circumstances" of this case to be "exceptional."

Defendants are, therefore, enjoined *pendente lite* from enforcing § 263.15 of the Penal Law of New York against plaintiffs, their officers, employees, agents, customers, distributors or customers of distributors, with respect to the publication, promotion, advertising, display, sale or distribution of the book entitled *Show Me!* published by St. Martin's Press, Inc.[17]

Settle order on notice.

---

**17.** Defendants did not formally move for a stay of this decision, but Point III of the Attorney General's brief states: "In the event of the grant of injunctive relief to plaintiffs, defendants Carey and Morgenthau request a stay of enforcement pending appeal, or at least pending a motion for a stay in the Second Circuit."

To grant defendants an interim stay would be inconsistent with this Court's finding that denying the injunction would cause plaintiffs irreparable harm, while granting it would not cause defendants irreparable harm. Accordingly, a stay will not be granted.