Affirmed with double costs and $2500 damages against appellants' counsel in this Court.

---

**ST. MARTIN'S PRESS, INCORPORATED, Crutcher and Newman Book Sellers, Inc., and Patricia Ince, Plaintiffs-Appellees,**

v.

**Hugh L. CAREY, Individually and as Governor of the State of New York, Defendant,**

and

**Robert M. Morgenthau, Individually and as District Attorney for the County of New York of the State of New York, Carl A. Vergari, Individually and as the District Attorney of the County of Westchester of the State of New York, and Patrick Henry, Individually and as District Attorney of the County of Suffolk of the State of New York, Defendants-Appellants.**

**Nos. 780, 950 and 951, Dockets 77-7603, 77-7623 and 78-7027.**

United States Court of Appeals, Second Circuit.

Argued April 3, 1978.

Decided Jan. 10, 1979.

---

Peter L. Zimroth, Chief Asst. Dist. Atty., New York City (Norman A. Bloch, Asst. Dist. Atty., New York City, on the brief), for defendant-appellant Robert M. Morgenthau.

Roy Gainsburg, New York City (David N. Kaye and Szold, Brandwen, Meyers & Altman, New York City, on the brief), for plaintiff-appellee St. Martin's Press, Inc.

Kenneth P. Norwick, New York City (Norwick, Raggio, Jaffe & Kayser, New York City, on the brief), for plaintiffs-appellees Crutcher and Newman Book Sellers, Inc. and Patricia Ince.

Steven A. Hovani, Asst. Dist. Atty., Riverhead, N.Y., for defendant-appellant Patrick Henry.

Henry R. Kaufman, New York City, for amici curiae Ass'n of American Publishers, Inc.

Before WATERMAN, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In 1975, appellee, St. Martin's Press, commenced publication of the English edition of a book called *Show Me!*, originally published in Germany by an "educationally and religiously oriented publishing firm." The book consists largely of full-page photographs of naked adults and children, and a number of the photographs are of a sexual or sex-oriented nature. The publishers assert that the photographs, which were taken in Germany between 1969 and 1973, have "educational, ethical, and psychological significance."

In 1977, the Legislature of the State of New York, declaring that "the care of children is a sacred trust" and that the "public policy of the state demands the protection of children from exploitation through sexual performances", added Article 263 to the New York Penal Law. Section 263.15 of Article 263 makes it unlawful knowingly to promote any performance that includes sexual conduct by a child less than sixteen years of age. "Sexual conduct" is defined in Article 263 to include "masturbation"; "performance" is defined to include "photographs"; "promote" is defined to include "sell", "publish", and "circulate".

On October 28, 1977, twelve days prior to the effective date of Article 263, St. Martin's Press and two bookstore owners commenced this action seeking a declaration that section 263.15 is unconstitutional on its face and may not constitutionally be applied to the publication and sale of *Show Me!*. Plaintiffs also sought an injunction preliminarily and permanently restraining defendants from enforcing the statute against plaintiffs and their customers, and an award of costs, disbursements, and attorneys' fees. By order to show cause, plaintiffs moved for preliminary injunctive relief. Appellants cross-moved to dismiss the complaint on the ground that no justiciable controversy was alleged and that there was no proper case or controversy for the district court to determine.

Affidavits were submitted by both appellants and appellees, and the district court heard oral argument. On November 28, 1977, the district judge issued a written opinion, reported at 440 F.Supp. 1196, which was followed by the order here on appeal. The order granted appellees' motion for a preliminary injunction and denied appellants' motion to dismiss. We reverse.

■ For many years, the Supreme Court, under its self-imposed rules, refused to pass upon the constitutionality of state statutes where the constitutional question might be avoided through statutory construction. *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 500–01, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Although this rule has not been totally abrogated by recent decisions, *see Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 510–13, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), it is not inevitably applied when the challenged statutes abridge free expression on their face. *See Dombrowski v. Pfister*, 380 U.S. 479, 489–90, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

■ Another longstanding rule of the federal courts has been that they will not use their equitable powers to interfere with or embarrass criminal proceedings in state courts, save in exceptional cases. *Douglas v. City of Jeannette*, 319 U.S. 157, 162–64, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). This doctrine, too, has been substantially eroded by the restriction of its application to ongoing criminal proceedings. *See Doran v. Sa-*

*lem Inn, Inc.,* 422 U.S. 922, 930, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ There remains, however, Art. III of the Constitution, which limits the jurisdiction of federal courts to cases or controversies. Federal courts have no power per se to declare statutes unconstitutional. *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The constitutional requirement of a justiciable controversy is met only where plaintiff has sustained, or is in immediate danger of sustaining, some direct injury, as a result of which there arises an honest and active antagonistic assertion of rights. *O'Shea v. Littleton,* 414 U.S. 488, 493–95, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). There must be a genuine threat of enforcement of a disputed state criminal statute before a case or controversy involving that statute may be said to exist. *Ellis v. Dyson,* 421 U.S. 426, 434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); *Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Younger v. Harris,* 401 U.S. 37, 41–42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For purposes of standing, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972); *see Bigelow v. Virginia,* 421 U.S. 809, 816–17, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

■ In the instant case, the district attorneys of three New York counties have been enjoined, upon penalty of contempt,

for doing nothing, absolutely nothing. They have not prosecuted the plaintiffs. They have not threatened to prosecute the plaintiffs. They have shown no interest in or concern over plaintiffs' book. Clearly, plaintiffs had no reason to believe that appellants intended to prosecute them under section 263.15 for disseminating their "educational" work.

We disagree with the district court's holding that appellees' book comes within the language of section 263.15, "and therefore the absence of affirmative conduct on the part of defendant prosecutors is not dispositive." 440 F.Supp. at 1201. The photograph of a young man masturbating, which appellees contend brings them within the reach of the statute, was taken in Germany before 1973, and section 263.15 was not enacted until 1977.[1] We cannot believe that the New York courts would construe section 263.15 to apply to children throughout the world, regardless of the moral and legal standards of the country in which they live, and would disregard the fact that the photograph in question was taken years prior to the enactment of the statute and the photograph's "promotion". We fail to see how the New York legislature in 1977 could have had any legitimate concern with the welfare of German children in the years before 1973, and we believe the New York courts would hold that the legislature had none.[2]

The district court's holding did not result from a "clash of adversary argument." *See United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1960).

---

1. Plaintiffs offered no proof supporting the allegation in their complaint that the "child" in question was under the age of sixteen. The district court made no express finding in this regard, but apparently accepted plaintiffs' "concession" that the subject of the photograph fell within the age limitations of § 263.15. 440 F.Supp. at 1201. Our own examination of the photograph does not prepare us to accept plaintiffs' concession so readily. No expertise in anatomy is needed to determine that, if the mature model for the photograph was not sixteen at the time he posed, he was surely sixteen by the time the statute was enacted and the photograph was "promoted".

2. The fact that the district court and this Court are in disagreement as to the interpretation of § 263.15 illustrates well why federal courts should try to abstain from interpreting unclear state statutes when the state courts have not yet spoken. Where there has been no harassment of anyone under the statute and statutory construction by the state courts might eliminate the constitutional issue, abstention is the appropriate course to follow. *Bellotti v. Baird,* 428 U.S. 132, 146–47, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816–17, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Appellees, alone, take the position that section 263.15 "unquestionably applies" to their book. There is, of course, no litigious controversy unless appellants contend that it does not apply. Appellants refuse, however, to make this anomalous argument, limiting themselves to the "academic" observation that the statute may not be applicable to appellees, a posture which the district court described as "non-committal". Appellants likewise take no position concerning the statute's constitutionality, because, from their standpoint, this question too is academic. Their position can be summed up in the remarks that counsel for the District Attorney of New York County addressed to the trial court:

> I'm frankly a little at a loss to understand why it is that the District Attorney of New York County is here before your Honor. I know procedurally we were served and there is a lawsuit and we are here but it's a suit to enjoin us from doing something which we have never done in the past, which we have not threatened to do and which we don't contemplate doing and more than that I can't say.

■ The district court misinterprets New York law in holding that appellants have a duty to enforce section 263.15 as written and that they would be unable to "obviate the threat" of prosecution in this case. 440 F.Supp. at 1202. The choice between prosecuting and not prosecuting is entirely within the discretion of a district attorney. *People v. Eboli,* 34 N.Y.2d 281, 289, 357 N.Y.S.2d 435, 313 N.E.2d 746 (1974); *In re*

*Hassan v. Magistrate's Court,* 20 Misc.2d 509, 191 N.Y.S.2d 238 (Sup.Ct.1959), *appeal dismissed,* 10 A.D.2d 908, 202 N.Y.S.2d 1002 (2d Dep't), *motion for leave to appeal dismissed,* 8 N.Y.2d 750, 201 N.Y.S.2d 765, 168 N.E.2d 102, *cert. denied,* 364 U.S. 844, 81 S.Ct. 86, 5 L.Ed.2d 68 (1960). A district attorney may, if he so decides, withhold prosecution forever. *McDonald v. Goldstein,* 191 Misc. 863, 865, 83 N.Y.S.2d 620 (Sup.Ct.), *aff'd,* 273 App.Div. 649, 79 N.Y.S.2d 690 (2d Dep't 1948).

■ There is nothing in the record to indicate that any appellant plans to prosecute appellees under section 263.15 for publishing and selling their book. In short, this is a case of the wicked fleeing where none pursue.[3] It does not involve a case or controversy which justifies intervention by a federal court.[4] The order appealed from is reversed, and the complaint against appellants is dismissed.

TIMBERS, Circuit Judge, dissenting:

The rather long period of gestation for this case—more than 13 months since the preliminary injunction was entered in the district court on December 7, 1977—perhaps is justified by what appears to be the clear import of the majority opinion, namely, that the appellant district attorneys have not prosecuted the appellee book publisher and book sellers under N.Y. Penal Law § 263.15 (McKinney Supp.1977); and they *do not intend to prosecute them* in the event they sell and distribute the book Show Me! or any of the material therein.[1]

---

**3.** *Proverbs* 28:1.

The district court did not find that appellees had any ulterior motive in bringing this suit, and we do not imply any. We would be blind, however, not to recognize the publicity value of litigation concerning an out-of-the-ordinary book such as the one plaintiffs are attempting to sell. Absent a clearly recognizable threat against the publication, litigation of this sort should not be encouraged.

**4.** The requirement that there be a "genuine threat of prosecution" applies with equal force to the issuance of an injunction. *Wooley v. Maynard,* 430 U.S. 705, 710 (1977). An injunction is "strong medicine", *Perez v. Ledesma,* 401 U.S. 82, 111 (1971), and an "obvious irri-

tant", *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 190 (1959). It will issue against the enforcement of a state criminal statute only in "exceptional circumstances" and upon a clear showing of necessity. *Wooley v. Maynard, supra,* 430 U.S. at 712 (citing *Spielman Motor Co. v. Dodge,* 295 U.S. 89, 95 (1935)).

This Court adheres to the principle that a defendant will not be enjoined from doing what he is not attempting to do. *Cortright v. Resor,* 447 F.2d 245, 254 (2d Cir. 1971), *cert. denied,* 405 U.S. 965 (1972).

**1.** The corollary to this of course is that, in the event the district attorneys should change their minds and either threaten or commence prose-

This being so, as a practical matter, one might wonder what harm would result if the injunction were left undisturbed and why it has required 9 months for this Court to resolve the case on appeal.

In view of the majority opinion, I believe that appellees have been impermissibly forced to choose between their right of free expression guaranteed by the First Amendment and the threat of imprisonment imposed by N.Y. Penal Law § 263.15. Accordingly, I respectfully dissent.

Judge Ward's careful, comprehensive opinion, 440 F.Supp. 1196 (S.D.N.Y.1977), presents a well reasoned explanation of why this case is appropriate for preliminary injunctive relief. I agree with it and would affirm on that opinion, adding only the following observations as to why I regard today's majority opinion as particularly unfortunate.

This case arises from New York State's commendable efforts to control the ugly traffic in child abuse. Toward that end, the Legislature in 1977 enacted new Article 263 of the New York Penal Law, defining offenses involving the use of a child under 16 in a sexual performance or the promotion of such a performance. Chapter 910, 1977 N.Y.Laws. The crime was very broadly defined to include acts to "procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise" a photograph or other visual representation of a sexual performance by a child. Stringent penalties—up to seven years in jail—were provided.

The Legislature, finding "that there has been a proliferation of exploitation of children as subjects in sexual performances," § 1, Chapter 910, 1977 N.Y.Laws, went on to issue a crusading call for the elimination of the target vice in every manifestation:

"The legislature further finds that the *sale* of these movies, magazines and photographs depicting the sexual conduct of children to be so abhorrent to the fabric of our society that it *urges law enforcement officers to aggressively seek out and prosecute* both the peddlers of children and the promoters of this filth by vigorously applying the sanctions contained in this act." (emphasis added). *Id.*

One such sanction is set forth in § 263.15, which makes criminal the knowing promotion of the sexual performance of a child. Under the very broad definitions of § 263.-00, "performance" includes a photograph, and "promotion" includes the sale of a book containing a photograph, even though both book and photograph are not obscene. *Cf.* N.Y. Penal Law § 263.10 (McKinney Supp. 1977) (dealing with promotion of an obscene sexual performance by a child). The district court preliminarily enjoined enforcement of § 263.15 pending the trial of plaintiffs' claim that it was both unconstitutional on its face and unconstitutional as applied to them.

Appellee St. Martin's Press is the publisher in the United States of the sex education book Show Me!. Appellees Crutcher & Newman and Ince are booksellers who stocked it in their bookstores. The book advocates a "realistic and explicit presentation" of sex to children to avoid the creation of feelings of fear and guilt, according to the president of St. Martin's. Ostensibly to achieve that goal, the book is illustrated with photographs of children and adults engaged in various types of sexual activity. The children depicted vary in age. The photographs were taken by an American in West Germany between 1969 and 1973. The sale and possibly the production of Show Me! appear to fall squarely within the conduct the Legislature intended to prohibit by enacting Article 263.[2]

---

cution under the statute, nothing in today's majority opinion would foreclose appellees from seeking injunctive relief in the district court.

2. Appellees urged before the district court that the statute not only squarely included Show Me!, but in fact had been aimed specifically at suppressing it, relying on a legislative commit-

tee meeting at which the book was circulated and a newspaper account. Noting that this "legislative history" was hearsay in nature, Judge Ward concluded that it was "insufficient to show that § 263.15 was enacted with the legislative intent to ban specifically the sale of Show Me!." 440 F.Supp. at 1201 n.8.

Shortly before Article 263 was to take effect, appellees commenced this action, seeking to have the statute declared unconstitutional and to restrain the district attorneys of New York, Westchester and Suffolk Counties from prosecuting them under § 263.15 for selling Show Me!.

The majority concludes that, because no state prosecution of Show Me! appears on the immediate horizon, appellees' assertions of deprivation of their constitutional rights are insubstantial—that "they flee where none pursue." In my view, however, today's majority decision forces appellees to choose between exercising their constitutional rights and conforming to New York law, to the injury of both—precisely the dilemma recognized by the Supreme Court in *Steffel v. Thompson,* 415 U.S. 452, 462 (1974):

> "[W]hile a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding. Cf. *Dombrowski v. Pfister,* 380 U.S. 479, 490 (1965)."

With deference, I think the majority's focus here is wide of the mark when it says in effect that, since no state prosecution has been commenced, appellees are unhindered in the exercise of their rights and the federal courts must stay their hands.

To me, the statute, and the legislative intent underlying the statute, are so broad and so clear that they provide the guaranty of actual adverse interest, without which we might otherwise require a prosecution. The impact of this statute on appellees is no mere "subjective chill," *Laird v. Tatum,* 408 U.S. 1, 13–14 (1972); it is an ominous winter storm which already has blanketed the protected activities of appellees. It is undisputed that distribution of Show Me! has been halted by the prospect of criminal liability. Appellees assuredly have sustained "injury in fact," *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153 (1970), sufficient to create the adversity of interests necessary for an Article III case or controversy. *Pierce v. Society of Sisters,* 268 U.S. 510 (1925).

The absence of any ongoing state prosecution, rather than creating a barrier to equitable relief, simply assures that there is no risk of intercourt friction or duplicative litigation arising from the instant federal action. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930–31 (1975); *Steffel v. Thompson, supra,* 415 U.S. at 462. *See generally* Note, The Implication of the Younger Cases for the Availability of Federal Equitable Relief When No State Prosecution Is Pending, 72 Colum.L.Rev. 874 (1972).

The determination of whether a case or controversy exists is not made in a vacuum free of the substantive law involved in a particular case. *Compare United Public Workers v. Mitchell,* 330 U.S. 75 (1947) (decision on constitutionality of Hatch Act avoided on ripeness grounds where workers had proposed merely to conduct certain political activities) and *Adler v. Board of Education,* 342 U.S. 485, 497 (1952) (Frankfurter, J., dissenting, opposed reaching constitutional challenge to state law which allowed dismissal of teachers for advocating subversive doctrines where plaintiffs were two parents, two taxpayers and four teachers, who alleged neither prosecutions under state law nor having engaged in the conduct it prohibited) *with Adler, supra,* 342 U.S. at 491–96 (majority reached the merits) and *Adler, supra,* 342 U.S. at 508 (Douglas, J., dissenting, favored reaching merits but to find statute unconstitutional). And, where the substantive law involved is so clear that the factual context of a particular case is relatively unimportant, the justiciability thresholds have been lowered. *See*

*generally* Comment, Threat of Enforcement—Prerequisite of a Justiciable Controversy, 62 Colum.L.Rev. 106 (1962).

Particularly where First Amendment rights are involved, courts must be sensitive to the first whisper of a chilling wind—the whisper picked up first by the beeches before the pines. The "chill" here was not that felt by appellees alone, *Laird v. Tatum, supra*; nor is this a case where appellees have scoured the statute books in an effort to obtain judicial repeal of statutes from which they felt that a future menace of harassment might arise. *Boyle v. Landry,* 401 U.S. 77, 81 (1971). Rather, appellees here were faced with a blunt, hard choice: on the one hand, to exercise their constitutionally guaranteed right of expression—even at the risk of prison or fines or both; or, on the other hand, to maintain their silence—at the loss of economic benefit, possibly irreparably, thus sacrificing "a prized American privilege." *Bridges v. California,* 314 U.S. 252, 270 (1941).

It was to avoid this Hobson's choice that appellees invoked the aid of the federal courts. The case is not one where an old law has been almost forgotten. *Poe v. Ullman,* 367 U.S. 497 (1961). Article 263 is "recent and not moribund." *Doe v. Bolton,* 410 U.S. 179, 188 (1973). Similarly, the possibility that prosecutors may choose in their discretion not to proceed against Show Me! or any other book under the statute is more than offset by the Legislature's vehement exhortation that law enforcement officers "aggressively seek out and prosecute . . . promoters of this filth." We have before us, therefore, not merely a case where "there will be extreme pressure upon [prosecutors] . . . in case of a violation," *Baird v. Bellotti,* 393 F.Supp. 847, 852 (D.Mass.1975) (three-judge court), *vacated and remanded on other grounds,* 428 U.S. 132 (1976); rather, the Legislature here has written that pressure into the very law that is challenged.

Under the extraordinary circumstances of this overly broad statute, coupled with the Legislature's battle cry for enforcement, the absence of a threatening docket entry in the state courts should not preclude a finding of ripeness in the federal courts. *Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 86 n. 1 (1977). "[T]he ultimate impact of the challenged action on the petitioner is sufficiently probable and not too distant . . . . ", *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 154–57 (1951) (Frankfurter, J., concurring).

In view of the double-barrelled attack by this statute on both the production and promotion of "this filth", I do not share my colleagues' confidence that the New York courts would decline to apply New York law to this case because the *production* took place abroad before the statute was enacted. It is undisputed that promotion of the book, within the meaning of the law, took place in New York after Article 263 was enacted. The New York Legislature, as my colleagues assert, may have no interest in the welfare of German children photographed almost a decade ago. But it was not merely direct harm to the depicted children which was the concern of Article 263. An equally important goal appears to have been the elimination of the derivative harm to society at large.

Assuming arguendo that it were to be determined by the highest court of New York that the taking of the pictures was beyond the scope of the law, that would not foreclose a prosecution based on the *present promotion,* by sale, of those pictures in New York. The *promotion* provision of the law cannot be reconciled so easily with the First Amendment, unless the statute's goal of preserving the fabric of society from such materials is to be forgotten entirely.[3]

I would affirm the judgment of the district court in all respects on the excellent opinion of Judge Ward. From the refusal

---

**3.** Indeed, the constitutionality of the entire statute recently has been upheld by the New York Supreme Court in the context of a criminal prosecution. One searches the opinion in vain for any reference to whether New York has sufficient contacts with the child-exploiting films involved apart from their having been sold to an undercover agent in New York. *People v. Ferber,* 409 N.Y.S.2d 632 (Sup.Ct., N.Y.Co., 1978).

of the majority to do so, I respectfully dissent.